Argued August 23, remanded with instructions September 23,
reconsideration denied October 22, petition for review denied
November 19, 1974

# THOMPSON, *Respondent, v.* SECRETARY OF STATE, *Petitioner.*

526 P2d 621

*W. Michael Gillette,* Solicitor General, argued the cause for petitioner. With him on the brief were Lee Johnson, Attorney General, John E. Moore, Chief Counsel, and William F. Hoelscher, Assistant Attorney General and Counsel, Salem.

*Bruce W. Williams,* P.C., Salem, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

In accordance with ORS 240.560 the Secretary of State has petitioned this court for judicial review of a final order issued by the Public Employe Relations Board (PERB or the Board). On June 17, 1974 the PERB held that when the Secretary of State terminated the employment of Mr. Thompson he did so without "sufficient cause," and ordered that the dismissal action be modified to a 30-day suspension

at the end of which Mr. Thompson was to be restored to his position as Assistant Secretary of State.

Prior to his dismissal on April 11, 1974, Mr. Thompson had been Director of the Elections Division. The dismissal action was taken subsequent to the filing of candidacies and Voters' Pamphlet materials for the 1974 primary election and was based on four charges incorporated into a letter from the Secretary of State to Mr. Thompson. The specific charges were:

"1. You accepted Senator Groener's Voters' Pamphlet copy from Senator William Holmstrom approximately one week after the legal deadline of 5:00 p.m., Thursday, March 21, 1974.

"2. You willfully pre-dated a receipt for the check accompanying Senator Groener's Voters' Pamphlet material.

"3. You deliberately concealed information about this situation from me, despite my repeated direct questions, over a period of several days, about candidates and the material submitted for the Voters' Pamphlet when, according to later explanations to me, you knew, or should have known, Senator Groener's Voters' Pamphlet copy was not properly filed.

"4. When I confronted you with facts indicating Senator Groener's Voters' Pamphlet copy was not filed before the legal deadline of 5:00 p.m., Thursday, March 21, 1974, you provided me, and others, with several inconsistent or conflicting explanations about the filing of this material."

Mr. Thompson appealed the dismissal to the PERB pursuant to the State Merit System Law (ORS ch 240). The PERB referred the matter to a hearing officer whom it may designate as an agent under ORS 240.080 "to make investigations and conduct hearings * * *." After an extensive hearing of witnesses and argument of the matter, the hearing officer submitted

to the Board "proposed" findings and conclusions which in substance upheld the action of the Secretary of State, and recommended that the Board affirm the dismissal by ruling it to have been taken in "good faith and for cause." The hearing officer also proposed that, in view of Mr. Thompson's record of nearly 15 years of commendable service, the Board contact the Administrator of the Personnel Division, Executive Department, and recommend that he make contact throughout state service to the end of finding employment for Mr. Thompson that would allow the use of his administrative abilities.

The matter was then argued before the Board, which had read the transcript of the hearing and the proposals. The Board in substance rejected the hearing officer's proposed findings and "found" in its conclusions:

"* * * [T]he suspension and dismissal actions were taken in good faith, but not for *sufficient* cause." (Emphasis supplied.)

The threshold question is whether—when reviewing an employe's appeal of dismissal brought pursuant to ORS 240.560—the PERB may weigh the evidence and make its own independent determination of the sufficiency of the cause for dismissal, or is required to affirm disciplinary action which is not arbitrary.

Resolution of this issue must begin with ORS 240.-560 itself which reads in relevant part:

"(1) A regular employe who is reduced, dismissed, suspended or demoted, shall have the right to appeal to the board * * *.

"* * * * *

"(3) If the board finds that the action * * * was taken * * * for any political, religious or

racial reasons, or was an unlawful employment practice * * * the employe shall be reinstated * * *.

"(4) In all other cases, *if the board finds that the action was not taken in good faith for cause,* it shall order the immediate reinstatement and re-employment of the employe in his position without the loss of pay. The board in lieu of affirming the action, may modify it by directing a suspension * * * or a demotion * * *. The findings and order of the board shall be certified in writing to the appointing authority and shall be forthwith put into effect by the appointing authority." (Emphasis supplied.)

The Board in this case found that the dismissal had been made "in good faith, but not for sufficient cause." There is no claim here that the action was not taken in "good faith"; the contested issue is whether the Board properly held that the action lacked "sufficient cause."

Respondent-employe asserts that ORS 240.560 (4) is intended to authorize the Board to act in a de novo capacity and to substitute its own judgment for that of the appointing authority in determining the sufficiency of cause for dismissal while petitioner argues that the statute must be read in the context of other relevant legislation limiting the Board's authority.

Prior to 1957 the power of the Civil Service Commission—the entity then responsible for reviewing appeals of disciplinary actions—was limited by ORS 240.560, which provided at that time:

"* * * * *.

"(3) If the commission finds that the action complained of was taken by the appointing authority for any political, religious or racial rea-

sons, the employe shall be reinstated to his position and shall not suffer any loss in pay.

"(4) *In all other cases, the findings of the commission shall be submitted to and considered by the appointing authority who shall make a final decision disposing of the appeal, which decision shall not be reviewable by any court * * *.*" (Emphasis supplied.)

In 1957 the statute was amended to its present form except for the provision concerning unlawful employment practices and the reference to "commission" instead of "board." (Oregon Laws 1957, ch 205, § 1, pp 246-47.) Mr. Thompson would appear to rely upon the deletion of that portion of the statute emphasized above as evidence supporting the proposition that the commission was henceforth authorized to independently evaluate the facts involved in disciplinary actions without deferring in any way to the judgment of the appointing authority. This is a difficult concept to follow, based upon a comparison of the old and new statutes.

Further, an investigation of the 1957 amendment's legislative history indicates little, if anything, to warrant this interpretation. Although the admittedly sparse history does suggest that the legislature was seeking to compel agencies to implement those orders of the commission made subsequent to findings that a dismissal or suspension lacked "cause," no legislative intent to expand the commission's scope of review in the first instance is apparent. (*See* Senate Committee on Labor and Industries, Minutes, April 16, 1957.)

Mr. Thompson's contention is further weakened when one considers that, at the time the Civil Service Commission was replaced by the PERB in 1969, ORS

240.086, which specifically defines the duties of the Board, was also enacted. After noting that the primary responsibility of the Board is to foster and protect a merit system of personnel administration in state government, the statute provides in relevant part that the Board shall

> "[r]eview any personnel action that is alleged by an affected party * * * *to be arbitrary or contrary to law or rule,* or taken for political reason, and set aside such action if it finds these allegations to be correct * * *." (Emphasis supplied.) ORS 240.086 (2).

We adhere to our decision in *Phillips v. State Bd. of Higher Ed.,* 7 Or App 588, 592, 490 P2d 1005 (1971), Sup Ct *review denied* (1972), in deciding that if the Board—through its own evidentiary hearing—has found facts which support the charges of the employer, it may *only* modify the disciplinary action taken if it can also find that no reasonable employer would have regarded those facts as sufficient cause for the action. *See also Palen v. State Bd. of Higher Education,* 18 Or App 442, 525 P2d 1047 (1974).

■ As modified by ORS 240.086 (2), the "cause" required by ORS 240.560 (4) must necessarily be "cause not constituting arbitrariness * * *." 7 Or App at 592. In order to modify or reverse an agency order dismissing or suspending an employe, the Board must—in those cases where "good faith" is not an issue—find that the action is arbitrary either because the employer has failed to establish facts to support the charges upon which the action is based or because though the charges are supported they constitute no "cause" upon which a reasonable employer would base the action taken.

■■ As we noted in *Phillips,* this statutory analysis is reasonable because:

"* * * To construe ORS 240.560 as employe urges would result in vesting disciplinary power of the various state agencies over their employes in the Board and not the agencies which appoint them. Such a result would undermine their authority and hamper efficient agency administration * * *." 7 Or App at 592.①

We note here as we did in *Phillips* that our interpretation does not reduce the Board to a "rubber stamp" with reference to agency action. Employers remain obligated to establish in a hearing before the Board or its agents following reasonable notice facts that support the charges upon which they base their disciplinary actions. The Board must still determine whether the disciplinary action was taken in "good faith," and where it was not, even though facts sufficient to warrant dismissal or suspension may be present, the Board can reinstate. *Cf.* our remarks in the concluding paragraph of *Donahue v. Bowers/ Steward,* 19 Or App 50, 526 P2d 616 (1974). Also, as we have pointed out above, where the Board finds that although the charges made were supported by facts no reasonable employer would regard as a sufficient basis for the specific action taken, it remains authorized by the statute to modify or reverse the order. And finally, under ORS 240.560 (3) an em-

---

① While inaction of the legislature is of little, if any, value in assessing legislative intent, we do note that as a direct result of this court's decision in Phillips v. State Bd. of Higher Ed., 7 Or App 588, 490 P2d 1005 (1971), Sup Ct *review denied* (1972), a bill intended to amend ORS 240.560 was introduced in the House during the 1973 session of the Oregon Legislature. House Bill 2551 specifically provided that the authority of the PERB would no longer be subject to the limitations of ORS 240.086 (2). After passing in the House it was referred to the Senate Judiciary Committee which failed to take any action on it before adjournment.

ploye must be reinstated if the Board finds that disciplinary action was taken for "any political, religious, or racial reasons, or was an unlawful employment practice * * *."

■ The Board's conclusion in this case, that the dismissal lacked *"sufficient* cause," coming after the decision in *Phillips,* must necessarily be interpreted as a determination that the dismissal was "arbitrary." The second question presented here is therefore whether that determination is supported by substantial evidence in the record. In this regard we noted in *Phillips v. State Bd. of Higher Ed.,* supra, 7 Or App at 593:

> "* * * Among the things that a court will examine in this type of review are whether the administrative board [that is, PERB] exercised its discretion judiciously and not capriciously, 'and arrived at no conclusion which was clearly wrong.' *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963) * * *."

With regard to the first charge included in the dismissal letter, the Board found:

> "There was uncontroverted testimony that some kind of a filing of incomplete, partially illegible Voters' Pamphlet material for Senator Groener, together with a check in the amount of $50 was delivered to Mr. Thompson prior to 5:00 p.m. on March 21, 1974 * * *."

This finding implicitly supports the charge that Mr. Thompson received material one week after the "legal deadline." ORS 255.031 provides that "[n]ot later than the 68th day before the primary election, any candidate * * * may file * * * a portrait cut * * * and a typewritten statement * * *" for inclusion in the Voters' Pamphlet. There was no evi-

dence that materials even remotely meeting these requirements were filed on or before the final date. Further, Oregon Election Manual, Part Three, "Manual for Candidates and Political Parties" 25-6 (1973-74)—an official publication of the Secretary of State's office designed to inform candidates of the law and rules to be followed—required material to be submitted in final form when submitted: "* * * Once your copy is officially filed, no changes in copy are allowed." The conclusions of the Board that the disputed material was "timely although not in final form," and that such handling "was not inconsistent with the purpose of the Voters' Pamphlet * * *" are irrelevant to the issue of whether Mr. Thompson actually did, as charged by the Secretary of State, accept materials after the legal deadline. Further, the Board's conclusion that the filing was timely appears to be inconsistent with another of its findings, namely, that Mr. Thompson *had* accepted material for Senator Groener from Senator Holmstrom on March 28, 1974.

Mr. Thompson acknowledged that the materials he allegedly received on March 21, 1974 failed to satisfy the requirements for submission; and that contrary to standard and important office procedures he failed to place a date stamp on the material, failed to issue a receipt for an accompanying check, destroyed those materials filed when other copy was delivered one week later, and finally, *issued a predated receipt for the check on March 28, 1974.* One of the effects of these admissions was clear substantiation of the second charge included in the Secretary of State's dismissal letter.

The third and fourth allegations charged Mr. Thompson with concealing information from the Sec-

retary of State in the face of repeated requests for reports on any problems involving the Voters' Pamphlet, and with giving conflicting explanations of his actions when questioned about the incident. The record indicates—as concluded by the Board—that while Mr. Thompson may have processed the materials submitted on March 28 in an "open" fashion within his own office, he failed to give the Secretary of State —his immediate supervisor and the man ultimately responsible for all transactions in the Elections Division—any notice whatsoever, in spite of general inquiries from that source, of the irregular way in which the materials had been handled. The Board found that "[i]n response to general questions, the [Secretary of State] was assured repeatedly by [Thompson], with one identified exception, that there was no problem with Voters' Pamphlet material * * *." The record further discloses that when finally confronted with specific inquiries by the Secretary of State and agents of the Attorney General's office Mr. Thompson provided conflicting versions of (1) the contents of the material allegedly submitted on March 21, (2) the date the accompanying check was delivered, (3) the location of the delivery of materials and check, (4) the identification of the individual making the delivery, and (5) the notations he made on those materials. Among the Board's findings is the conclusion that Mr. Thompson "did give inconsistent and conflicting answers on what was filed and when it was filed."

The Board's findings of fact confirm that the charges made by the Secretary of State were supported by the evidence introduced during its hearing of the matter. Any modification of the dismissal based on the conclusion that the charges were unsupported

by facts would be inconsistent with the Board's own findings and would be therefore a "capricious" exercise of its authority.

The only remaining ground upon which the Board could have properly modified the dismissal order in this case would have been a finding that the charges established were so inconsequential that no reasonable employer would have regarded them as sufficient grounds for the dismissal, i.e., the Secretary's action was so disproportionate to the offense as to be arbitrary. The Board's conclusions that the acts of Mr. Thompson were not a deliberate concealment of irregularities, and that his actions were not inconsistent with the purpose of the Voters' Pamphlet as well as another finding that the Secretary of State had made two exceptions for others in the past, may be viewed as directed toward a conclusion that the charged misconduct was inconsequential.

We think it reasonable to believe that, as a consequence of the irregular handling of the Groener material and the subsequent inconsistent reports to the Secretary of State, the relationship of confidence and trust which an employer might reasonably require between himself and an assistant charged with a high degree of responsibility in a sensitive area had been destroyed. In response to a question regarding his relationship with Mr. Thompson, the Secretary of State replied:

"Well, that an individual that I had worked with closely for some years had jeopardized the integrity of the elections system by back-dating a receipt and by not being candid with me.

"Frankly, it did destroy the trust and the confidence that I had had in him, because when you have worked closely with an individual for nearly

7½ years, in building what you think, is the finest elections system in America, and then find the individual with whom you worked has thrown into question the integrity of that system.

"I was dismayed, hurt, and felt that I could no longer have trust or confidence in him."

Dismissal by the Secretary of State under these unique circumstances was not an unreasonable response.

The case is remanded to the Public Employe Relations Board with instructions to enter an order consistent with the fact findings we have reviewed here, and with this opinion.