Argued December 20, 1974, affirmed February 10, reconsideration
denied March 19, petition for review denied April 22, 1975

JAMES, *Respondent, v.* EMPLOYMENT
DIVISION, *Petitioner.*

531 P2d 710

*W. Michael Gillette*, Solicitor General, Salem, argued the cause for petitioner. With him on the brief was Lee Johnson, Attorney General, Salem.

*Alan K. Brickley*, Portland, argued the cause for respondent. With him on the brief were Peterson, Susak & Peterson, P.C., Portland.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

The state Employment Division discharged employe Kenneth D. James, 58, as manager of the McMinnville, Oregon, employment office for "[m]iscon-duct, inefficiency, incompetence and other unfitness to render effective service * * * ORS 240.555." After a hearing before the Public Employe Relations Board (hereinafter PERB or Board) hearings officer, that officer recommended affirmance of the discharge. The PERB disagreed with the recommendation for discharge, and the full Board, having heard arguments for and against affirmance of the discharge, concluded as its determination:

"* * * * *

"* * * In view of the Appellant's above average performance and his length of service with the agency [17 years], the board concludes that the dismissal action was taken in good faith, but that there was not sufficient cause to warrant an ultimate act of dismissal.

*Order*

"In lieu of affirming the dismissal action, it is

hereby modified to a demotion to the highest level non-supervisory position for which the Appellant is qualified by experience, training and service credit."

■ The Employment Division petitioned for judicial review of the Board's order. The Employment Division contends that in modifying the discharge PERB was substituting its judgment for that of the agency contrary to our holding in *Thompson v. Secretary of State,* 19 Or App 74, 526 P2d 621, Sup Ct *review denied* (1974). There we held that in order to modify or reverse an agency order dismissing an employe, the Board must, in those cases where good faith is not an issue, find that the action of the agency was arbitrary either because the employer failed to establish facts to support the charges or if the charges were supported, they did not constitute "cause" upon which a reasonable employer would base discharge. We held modification was not appropriate in the *Thompson* case principally because of the deceit which Thompson practiced upon his employer resulting in a breach of the confidence and trust which we concluded must be maintained between the employer-Secretary of State and an assistant such as Thompson charged with a high degree of responsibility in a sensitive area. There we said:

"* * * In response to a question regarding his relationship with Mr. Thompson, the Secretary of State replied:

" 'Well, that an individual that I had worked with closely for some years had jeopardized the integrity of the elections system by back-dating a receipt and by not being candid with me.

" 'Frankly, it did destroy the trust and the confidence that I had had in him, because when you have worked closely with an individual for

nearly 7½ years, in building what you think, is the finest elections system in America, and then find the individual with whom you worked has thrown into question the integrity of that system.

" 'I was dismayed, hurt, and felt that I could no longer have trust or confidence in him.'

Dismissal by the Secretary of State under these unique circumstances was not an unreasonable response." 19 Or App at 85-86.

In the present case neither the integrity nor the morality of the employe James was challenged. His bad taste in use of words and his general bad judgment in supervising employes was the principal challenge. His work record was summarized by the Board as follows:

"1. The Appellant was employed by the Employment Division (then Department of Employment) in 1957 in the classification of Employment Interviewer 1. He worked continuously for the Employment Division from the date of his original employment until he was dismissed. His work record shows that he was promoted several times and in 1968 he was promoted to the position of Manager of the McMinnville office. He held this position at the time of his dismissal.

"2. The appellant is 58 years old and married.

"3. The formal reports of evaluation of the Appellant's work performance by his supervisors while he was office manager of the McMinnville office were:

5/30/69    Performance Usually Above Required Standards

9/30/69    Performance Usually Above Required Standards

9/30/70    Performance Far Exceeds Normal Expectations

9/30/71   Performance Far Exceeds Normal
          Expectations
9/30/72   Performance Far Exceeds Normal
          Expectations
9/30/73   (as amended 12/20/73) Unsatisfactory
          Because of his Inability to Function
          Satisfactorily in the Supervision and
          Control of Staff
"* * * * *."

In its conclusions the Board found that James was guilty of misconduct for using vulgar, sometimes obscene, and abusive language directed to employes under his supervision, for being over-dominating to some of them; for making improper, irrelevant-to-employment-business comments on some employes' private lives; for making physical contact with some employes (especially as to some female employes in patting them or whacking them on the buttocks with a newspaper); for criticizing some employes in the presence of staff and the public. The Board concluded that the above conduct resulted in a majority of those employes working under James' supervision being alienated from him as a supervisor.

Thus it appears that James' principal disqualification is in the area of supervision. As the Board found:

"* * * [His] acts * * * reflected upon his ability to serve as a *manager* of a local employment office." (Emphasis supplied.)

The record also indicates that the vulgar, dominating, roughshod personnel handling by James only surfaced during the latter part of his management tenure. On December 11, 1973, without prior notice he was summoned to the office of his superiors and discharged. He was not warned by his superiors nor was he questioned about his performance by them prior to dis-

missal as in *Thompson* where prior to dismissal the Secretary of State made repeated inquiry of Thompson as to reported irregularities in connection with his handling of voters' pamphlet material and as in *Phillips v. State Bd. of Higher Ed.*, 7 Or App 588, 490 P2d 1005 (1971), Sup Ct *review denied* (1972), where repeated warnings that her performance was objectionable, including a 10-day suspension, had been given the employe some time prior to dismissal.

There is nothing in the record to indicate that James could not function adequately as a non-supervisory employe. In fact, there is much in the record which shows that he is experienced and competent in every phase of the operation of a local employment office. He had successful experience in various Oregon offices as employment interviewer (in which position he started with the Employment Division in 1957), claim taker, placement section, employer visiting, unemployment claims, farm program, administration of GATB tests, claims adjuster and vocational counselor.

■ We conclude, therefore, that a reasonable employer would not, under the record under review here, have regarded the conduct of the employe as sufficient for the harsh action of dismissal, but rather, as is implicit in the holding of the Board,[1] warranting only "demotion to the highest level non-supervisory position for which the Appellant is qualified by experience, training and service credit."[2]

---

[1] This Board order was pre-*Thompson* and thus the Board did not have the benefit of the reasoning of this court in Thompson v. Secretary of State, 19 Or App 74, 526 P2d 621, Sup Ct *review denied* (1974).

[2] The respondent's brief filed by James partly concerned itself with what it denominated a "cross appeal" but no cross-

Affirmed.

THORNTON, J., dissenting.

I agree that the rule applicable here is as stated in the majority opinion, namely, that the Public Employe Relations Board (PERB) cannot overturn disciplinary action taken by a public employer (dismissal in this case) unless PERB can say that no reasonable employer would have dismissed petitioner on account of his conduct.

I cannot, however, agree with the conclusion of PERB and the majority that no reasonable state employer would have discharged this petitioner on the basis of the record in this case. On the contrary, I find that the record establishes a course of conduct by petitioner, a top-level executive, that no reasonable public agency head would countenance. Some of petitioner's conduct is set out in the margin.[1]

---

petition for judicial review as contemplated by ORS 183.480(2) was filed so we have allowed the Employment Division's motion to strike that portion of the brief.

[1] For example, both the hearing officer and PERB found:

"* * * * *

"* * * [Petitioner], in communicating with and to staff members, used words, terms and expressions including: 'bullshit'; 'you're a goddam nitpicker'; 'doesn't know shit from shinola'; 'bastard'; 'bitch'; 'son-of-a-bitch'; 'pissed-off'; 'fricking'.

"* * * * *

"* * * [Petitioner] stated that employes approaching retirement had to do as he told them out of fear of losing their jobs.

"* * * [Petitioner] told employes to 'shut up' in staff meetings, was often critical in presence of staff and public, and told and [sic] assistant manager in the presence of staff, 'you don't know shit from shinola.'

"* * * [Petitioner] made hand contact with employes, male and female. Some of these contacts consisted of patting female employes on the rump in the presence of others.

To conclude as does PERB and the majority that no reasonable public employer would have discharged petitioner on the basis of this execrable conduct is too much for me to accept. I do not believe that the State Employment Division should be compelled to have petitioner anywhere in its agency, as PERB's order requires.

I would reverse PERB and uphold the dismissal.

---

"* * * [Petitioner] on numerous occasions voiced opinions and inquired of the sex life and accommodations of female members of his staff.