Argued and submitted April 22, reversed and remanded May 18, 1981

# BROWN,
## *Petitioner,*
### *v.*
# OREGON COLLEGE OF EDUCATION et al,
## *Respondents.*

### (No. 1046/1067, CA 19759)

628 P2d 410

Bromleigh S. Lamb, Salem, argued the cause and filed the brief for petitioner.

Al Laue, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

Petitioner was dismissed as an employe of the respondent college on the ground that he used abusive language and aggressive gestures toward a faculty member and two students who, over a two-day period, sought rightfully to enter and use facilities of a college building where petitioner performed custodial duties during the evening hours.[1] The college also based its action on similar behavior by petitioner toward a supervisor after petitioner was suspended as a result of the other encounters. Prior to those episodes, petitioner had had a good work record and no disciplinary history during the five-year period he had been employed by the college. The Employment Relations Board (ERB) affirmed the dismissal by a two-to-one vote, with one member of the majority specially concurring. Both the prevailing and concurring opinions of ERB appear to have been based on the understanding that the "no reasonable employer" test adopted in decisions by this court compelled ERB to affirm the college's action. We reverse and remand.

ORS 240.560(4), the statute which governs ERB's authority to reverse or modify certain disciplinary decisions by other state agencies, provides as relevant:

"In all cases, if the board finds that the action was not taken in good faith for cause, it shall order the immediate reinstatement and the reemployment of the employe in his position without the loss of pay. The board in lieu of affirming the action, may modify it by directing a suspension without pay for a given period, and a subsequent restoration to duty, or a demotion in classification, grade or pay.* * *"

In *Thompson v. Secretary of State*, 19 Or App 74, 526 P2d 621, *rev den* (1974), we stated:

"We adhere to our decision in *Phillips v. State Bd. of Higher Ed.*, 7 Or App 588, 592, 490 P2d 1005 (1971), Sup Ct *review denied* (1972), in deciding that if the Board— through its own evidentiary hearing—has found facts which support the charges of the employer, it may *only* modify the disciplinary action taken if it can also find that no reasonable employer would have regarded those facts as

---

[1] Petitioner was apparently unsure whether these persons were authorized to enter the building at night.

sufficient cause for the action. *See also Palen v. State Bd. of Higher Education,* 18 Or App 442, 525 P2d 1047 (1974).

"As modified by ORS 240.086(2), the 'cause' required by ORS 240.560(4) must necessarily be 'cause not constituting arbitrariness * * *.' 7 Or App at 592. In order to modify or reverse an agency order dismissing or suspending an employe, the Board must—in those cases where 'good faith' is not an issue—find that the action is arbitrary either because the employer has failed to establish facts to support the charges upon which the action is based or because though the charges are supported they constitute no 'cause' upon which a reasonable employer would base the action taken." 19 Or App at 80. (Emphasis in original.)[2]

We explained the reason for the "no reasonable employer" test as follows:

"As we noted in *Phillips,* this statutory analysis is reasonable because:

" '* * * To construe ORS 240.560 as employe urges would result in vesting disciplinary power of the various state agencies over their employes in the Board and not the agencies which appoint them. Such a result would undermine their authority and hamper efficient agency administration * * *.' 7 Or App at 592.

"We note here as we did in *Phillips* that our interpretation does not reduce the Board to a 'rubber stamp' with reference to agency action. Employers remain obligated to establish in a hearing before the Board or its agents following reasonable notice facts that support the charges upon which they base their disciplinary actions. The Board must still determine whether the disciplinary action was taken in 'good faith,' and where it was not, even though facts sufficient to warrant dismissal or suspension may be present, the Board can reinstate. *Cf.* our remarks in the concluding paragraph of *Donahue v. Bowers/Steward,* 19 Or App 50, 526 P2d 616 (1974). Also, as we have pointed out above, where the Board finds that although the charges made were supported by facts no reasonable employer would regard as a sufficient basis for the specific action taken, it remains authorized by the statute to modify or reverse the order. * * *" 19 Or App at 81.

---

[2] *Thompson* and the other cases were rejected by our opinion in *Fairview Hospital v. Stanton,* 28 Or App 643, 560 P2d 667 (1977), insofar as they relate to ERB's *factfinding* powers under ORS 240.560. However, *Stanton* expressly endorsed the "no reasonable employer" test of *Thompson* and its precursors as the proper limitation on ERB's *remedial* powers. *See* 28 Or App at 647.

This appeal presents three issues:

First, does the "no reasonable employer" test adopted by this court remain viable in light of the Supreme Court's recent conclusion in *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), that "delegative terms" in statutes are subject to initial interpretation and "policy refinement" by the agencies responsible for implementing or enforcing the statutes rather than by the courts? *See* 290 Or at 229.

Second, assuming that the test remains viable, how should it be applied by ERB to specific fact situations?

Third, did ERB correctly apply the test in this case?

## I.

Petitioner argues that the language of ORS 240.560(4) contains "delegative terms" within the meaning of *Springfield* and is therefore subject to agency rather than judicial definition. It follows, according to petitioner, that ERB was not bound by any prior judicial construction of the statutes and had authority to determine whether there was "cause" for petitioner's dismissal according to its own policy criteria.

We understand *Springfield* and other recent Supreme Court opinions which deal with similar issues to be aimed at allocating interpretive authority between courts, on the one hand, and, on the other, agencies which are specifically responsible for the application, administration or enforcement of the statutes being interpreted. In our view, *Springfield* does not support petitioner's contention that our "no reasonable employer" test transcends our authority or invades the agency's. The test is, in a sense, a judicial interpretation of a statutory term which must be applied by ERB to particular fact situations, *see Springfield Education Assn. v. School Dist., supra* at 229; however, as explained in *Thompson,* the principal purpose underlying our adoption of the test was to give effect to the legislature's intended division of authority over disciplinary decisions between the employing agency and ERB. In other words, the *primary* issue resolved by *Thompson* and our other decisions was not what the statutory terms mean, but how much responsibility the legislature intended to delegate to one agency to reverse or modify other agencies' actions.

In *Civil Rights Div. v. Williams,* 280 Or 595, 573 P2d 270 (1977), the Supreme Court affirmed a decision of this court which adhered to and applied the "no reasonable employer" test, *see* 28 Or App 651, 560 P2d 673 (1977), and, in so doing, the court endorsed our rationale for the test. It stated:

"This holding of the Court of Appeals is in conformance with its prior construction of the statutes to the effect that it was intended that the primary authority to impose sanctions upon employes should be in the hiring and supervising agencies, as long as the sanctions are reasonable and not arbitrary. The Court of Appeals divined the policy of the legislature, as demonstrated by the statutes, to be that primary responsibility for the discipline of employes should be in the employing and supervising agency, and not in ERB. Though this construction of ORS 240.560 first manifested itself in January 1972 with the *Phillips* decision, and three legislative sessions have since elapsed, one of which saw the reenactment of this very section, the legislature has not chosen to change the portion here in question.

"An argument can be made that the construction by the Court of Appeals effectively erases the power of modification plainly given to ERB by the statute. Such is not the case, however, because any arbitrary or unreasonable sanction may, under the court's construction, be modified by ERB.

"Williams argues that the court misconceived the legislative intention and that it is unreasonable to assume that the agency would act fairly in any event after its original penalty was set aside because of a diminution in the proved charges. The division between the employing agency and ERB of the authority to impose sanctions upon an employe is a matter of policy for the legislature. Either construction of the present statutes is arguable. The Court of Appeals has adopted one construction, and the legislature has, seemingly, acquiesced." (Footnote omitted.) 280 Or at 600-601.

We conclude that the "no reasonable employer" test is a judicial interpretation of a statutory division of responsibility between agencies, and, as such, the test does not construe delegative terms over which a single agency has interpretive authority in such a way as to invade the agency's province. The test remains viable and we continue to subscribe to the test as we now interpret it.

## II.

Each member of ERB filed a separate opinion in the agency proceeding.[3] The three opinions reflect differing understandings of how ERB is to apply the "no reasonable employer" test to particular facts. The prevailing opinion concluded that, in light of the test, "[w]e must restrain ourselves from the inclination to substitute our judgment for that of the employer * * *." The specially concurring member stated that he concurred with the prevailing opinion "only because the 'no reasonable employer' standard of review mandates this result," and he then critically analyzed that test:

"* * * (It is interesting to note that the 'no reasonable employer' test was conceived in *Phillips,* where the court concluded that to construe ORS 240.560(4) as empowering this Board with anything greater than 'quasi appellate' review authority would undermine and hamper agency authority and efficient administration—a proposition later rejected in *Fairview Hospital v. Stanton,* 28 Or. App. 643, (1977) to the extent it applied to this Board's *factfinding* authority.)

"The difficulty in applying the 'test' is typified in the court's divided opinion in *James v. Employment Division,* 20 Or. App. 309, 531 P. 2d 710 (1975). There, the *majority* ruled that no reasonable employer would have terminated the employe, while the dissent concluded that no reasonable employer would fail to terminate. The present case presents a *James*-like situation. An employe with a good work record was summarily dismissed. There was no prior discipline or warning (as in *Phillips*), nor any breach of trust (as in *Thompson).* Here, a 5-year employe with a more than satisfactory work record became agitated, exhibiting irrational behavior on three occasions. (The incidents occurred so close in time that they should properly be viewed as a single event.) While this type of behavior cannot be condoned, it would seem that dismissal was by no means the most reasonable of responses available to the employer. * * *" (Emphasis in original.)

The dissenting ERB member took a very different view of the meaning of the test and of the scope of ERB's review under it. He stated:

---

[3] We have been greatly assisted in our consideration of this appeal by the cogent opinions of the ERB members.

"This Board may modify or set aside a disciplinary sanction only if it finds that 'no reasonable employer' would impose the selected sanction under the circumstances. My fellow Board members appear to be misled by the words 'no reasonable employer' in that they judge the employer rather than the act: they conclude that if any otherwise reasonable employer might have committed the same act, then the act must be affirmed, regardless of whether or not the act itself was intrinsically reasonable. There is a more rational way to apply the 'no reasonable employer' test.

" 'The reasonable employer' is a legal fiction of the same nature as 'the reasonable man' used to describe the standard of conduct demanded of a person if that person is to avoid liability for negligence. * * *

"* * * * * *

"We know that all of us very reasonable men commit occasional acts of carelessness, but the law—for purposes of determining tort liability—says no reasonable man does so. The law examines the act, not the actor, to determine if the actor was negligent. This Board should apply the no reasonable employer standard in the same fashion. It is not sufficient to say that some actual reasonable employer might have taken the action complained of; rather, we must be able to conclude that the employer's act itself was that of our fictive reasonable employer. If the course of action is not one that would have been pursued by *the* reasonable employer, then we must conclude that 'no reasonable employer' would have acted in that manner, regardless of whether or not we believe the actual employer in question is, overall, *a* reasonable employer." (Footnotes omitted, emphasis in original.)

It is not surprising that ERB was unable to reach consensus on how the "no reasonable employer" test should be applied in this case, for we have never adequately addressed the issue of how the test is to be applied. Our opinion in *Fairview Hospital v. Stanton,* 28 Or App 643, 560 P2d 667 (1977), provided some guidance, but we feel that further clarification is necessary.

We stated in *Stanton:*

"* * * Our opinion in *Thompson* may have blended two distinct issues: ERB's factfinding authority, i.e., did or did not a discharged public employe commit certain acts, versus ERB's remedial authority, i.e., what remedies can ERB invoke if it finds the facts to be different than they were

perceived to be by the appointing authority at the time of discharge. As for remedial authority, we held that ERB could only modify disciplinary action taken if it finds that no reasonable employer would have regarded the facts as sufficient cause for the disciplinary action taken. 19 Or App at 80. We adhere to that view of ERB's remedial authority as explained more fully in *Civil Rights Div. v. Williams,* 28 Or App 651, 560 P2d 673 (1977).

"As for factfinding authority, *Thompson* is capable of being read for the proposition that ERB cannot review de novo. * * *

"* * * * *

"There is a possible contradiction between viewing ERB as a 'quasi-appellate tribunal,' *Phillips,* that does not make factual determinations de novo, *Phillips* and *Thompson,* and the requirement that employers prove the factual basis of disciplinary action * * *.

"* * * * *

"* * * It is misleading to think of the proceedings before ERB as an 'appeal' that is 'reviewing'—de novo or otherwise—a prior determination. ERB is, under the statute and constitution, the primary factfinder, that is, the tribunal before which all parties have the opportunity to present and rebut evidence relevant to disciplinary action against a public employe, the tribunal that resolves any conflicts in the evidence, and the tribunal which draws inferences from the evidence. * * *" 28 Or App at 647-649.

It *can* be inferred from *Stanton* that ERB is to find the *facts,* but that the "no reasonable employer" test pertains only to the scope of ERB's *remedial* powers under ORS 240.560 and has nothing to do with ERB's factfinding function. To the extent that inferences can be drawn from it, we now conclude that *Stanton* distinguishes too sharply between the factfinding and remedial functions of ERB under the statute. It is correct that the "no reasonable employer" test is the *legal* determinant of whether a remedy is available; it does not follow from that, however, that whether a particular disciplinary action is one which a reasonable employer would take is not a *factual* question. As the dissenting ERB member suggests, a jury may *legally* award damages to a plaintiff in a negligence case only if the defendant's conduct fails to meet the reasonable person standard; but whether that standard has been met is a *fact* question for the jury.

■ Stated differently, *Stanton* correctly holds that any remedy ERB can provide an employee under ORS 240.560 is contingent on its finding that no reasonable employer would have acted as the employer did in a given situation; however, whether a disciplinary decision is one which no reasonable employer would make is a factual question, in the same sense that the reasonable person test in tort law is a question for the trier of fact.

■ We now adopt the earlier quoted portion of the dissenting ERB member's opinion as the proper approach to be followed by ERB in applying the "no reasonable employer" test. It follows that we now reject any suggestion in our earlier opinions that ERB has no power to reverse or modify an employer's disciplinary action whenever ERB concludes that the facts upon which the employer relies are proven and that the employer, who is otherwise reasonable, made a subjective judgment that those facts warranted the action taken. ERB's inquiry must go beyond that and reach the factual question of whether the action itself is objectively reasonable.

### III.

The remaining question is whether petitioner's case was decided by ERB in accordance with the standard for applying the "no reasonable employer" test we have here announced. We hold that it was not. There is *some* suggestion in the prevailing ERB opinion that its author treated the test as a subjective one. More importantly, the specially concurring member, after enumerating mitigating factors in this case, reluctantly stated:

> "Notwithstanding these mitigating circumstances, I cannot conclude that [petitioner's] actions were 'so inconsequential' that no reasonable employer would deem them sufficient cause for termination."

We understand that statement to mean that mitigating factors cannot or need not be considered by ERB in determining whether an employe's conduct could be found by a reasonable employer to be sufficient cause for termination.

■ ■ The "no reasonable employer" test, as we now interpret it, would clearly allow ERB to consider mitigating factors in reviewing agency disciplinary actions, insofar as such factors can be relevant to a reasonable employer in

deciding whether an employe's conduct warrants a particular disciplinary response. Because at least one Board member in the two-member majority construed the "no reasonable employer" test as circumscribing ERB's factfinding function to a greater extent than we now hold it does, and because that ERB member might have shared the dissenter's view of the facts if he had applied the test as we now interpret it, we conclude that petitioner is entitled to a new determination by ERB.

Reversed and remanded.