Argued and submitted February 13, reversed and remanded May 22, 1985

OREGON SCHOOL EMPLOYEES
ASSOCIATION, CHAPTER 115,
*Respondent,*

*v.*

PENDLETON SCHOOL DISTRICT 16R,
*Petitioner.*

(C-97-83; CA A32979)

699 P2d 1155

Nancy J. Hungerford, Milwaukie, argued the cause and filed the brief for petitioner.

Clayton C. Patrick, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner, Pendleton School District (District), seeks judicial review of an order of the Employment Relations Board (ERB) holding that District committed an unfair labor practice under ORS 243.672(1)(g) by dismissing an employe in violation of the terms of a collective bargaining agreement. We reverse.

The employe in this case, Timmerman, was hired in October, 1981, by District to fill the position of head secretary to Canon, the principal of Pendleton High School. Timmerman, as a District employe, belonged to a bargaining unit represented by the respondent Oregon School Employees Association (OSEA). At the time of her dismissal, OSEA and District were parties to a collective bargaining agreement that provided alternative procedures for employe dismissal. One alternative called for dismissal only after a multi-level review procedure, which in turn was preceded by a stage of evaluations and the employe's participation in a "plan of assistance" developed to improve the employe's job performance. The other alternative permitted the immediate suspension of an employe on charges of "flagrant misconduct." If, after investigation, the charges were substantiated, termination was effective retroactive to the date of suspension.

On November 10, 1982, Timmerman and Canon held a conference in which they discussed, *inter alia,* Timmerman's request to leave work early on November 12, 1982, so that she could attend the school's football playoff game in Hillsboro. Canon approved Timmerman's request but directed her to work until 2 p.m. before leaving. They also agreed, due to circumstances brought to Canon's attention, that Timmerman was not to ride on the school band bus either going to the game or on the return trip to Pendleton.[1]

The morning of November 12 found the school's front office busier than usual, largely due to the exodus of students and staff leaving for the playoff game. Timmerman had arranged for a ride to Hillsboro with a friend, but the time

---

[1] The parties had previously discussed Timmerman's dating the school's band director. Canon was concerned that two keep their personal relationship separate from their professional one and his directive to Timmerman was intended to accomplish that result.

of departure had not yet been established. At 11 a.m., her friend called and asked if she would be ready to leave at noon, but Timmerman said she could not leave until 2 p.m. Her friend responded that that time was "absolutely impossible" because of a 6 p.m. appointment in Portland. Timmerman subsequently made arrangements to leave at 1:00 p.m. by working through her lunch hour and asking another school secretrary to cover for her at the principal's office.[2] However, although Timmerman was aware as early as 11 a.m. that she may have had to depart earlier than expected, she did not inform Canon of that possibility or otherwise request permission to leave early, even though he was available.

Timmerman and her friend left Pendleton at 1:00 p.m. and arrived in the Portland area around 5 p.m. They decided to stop for dinner at a resturant in southeast Portland. By an interesting "coincidence," the school "rooter" bus and band bus also stopped at the same restaurant.

Timmerman's friend left the restaurant after speaking with the school band director but without speaking to Timmerman. As a result, Timmerman rode the school band bus to the football game. At the game, Timmerman's friend told the school band director that he would not be returning to Pendleton that night; Timmerman subsequently rode the school band bus back to Pendleton with the band director.

ERB's order states the events that followed:

"9.   On Monday, November 15, Canon learned that Timmerman had left work at 1:00 p.m. on November 12 and that she had ridden part of the trip on the band bus. He suspended her from duty on that date and recommended that she be dismissed. The School Board terminated Timmerman on December 14, retroactive to November 16, 1982."

"10.   Timmerman grieved the discipline. The School Board denied the grievance on January 11, 1983, which was the final step in the contractual grievance procedure."

OSEA, representing Timmerman, filed an unfair labor practice complaint with ERB, which concluded that her actions, while insubordinate, did not amount to "flagrant misconduct." ERB, citing its power to order "affirmative

---

[2] Timmerman and other secretaries had occasionally rearranged their lunch hours to accommodate personal appointments.

action," reduced Timmerman's termination to a suspension and ordered reinstatement with back pay from the date of termination. This petition for judicial review followed.

The issue presented to ERB was whether District violated the dismissal provisions of the collective bargaining agreement entered into by the parties in this case, thereby committing an unfair labor practice under ORS 243.672(1)(g).[3] Article XIII of the parties' agreement provides for dismissal. Sections 13.1 and 13.2 discuss the "dismissal, suspension, or demotion of employees" and "Dismissal Procedures," respectively, stemming from "unsatisfactory job performance." Section 13.3 ("Immediate Suspension") provides:

> "In the event of flagrant misconduct, the employee may be suspended immediately from employment until such charges are investigated and a decision is made to continue or terminate employment. If the employee is cleared of the charges, affected employee will be immediately reinstated without loss of pay or other benefits.

> "If the charges are upheld, the termination date will be the date of suspension.

> "Investigation and decision concerning charges for suspended employee will not exceed ten (10) days from time of suspension."

ERB disagreed with the dismissal of Timmerman by District under Section 13.3, concluding that there was not "flagrant misconduct."[4] An examination of the order of ERB,

---

[3] ORS 243.672(1)(g) provides, in pertinent part:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations * * *."

[4] ERB relied on one of its own cases in which the term "flagrant misconduct" was interpreted, but we believe that that reliance is misplaced. In *OSEA Chapter 139 v. Redland School Dist. 116 and Warren Linville*, 6 PECBR 5260 (1982), a school district employe was dismissed under a similar provision in a contract, because she left her job in the school library to take her son to the doctor. In reinstating the employe, the ERB found no evidence of insubordination or directions from her supervisor to follow certain policies—factors clearly different from what occurred in this case.

however, leaves us at a loss as to the basis for its determination. Its conclusions are replete with references to Timmerman's testimony which we can only characterize as questioning her credibility. It also acknowledged that Timmerman was, in fact, insubordinate in disobeying two direct orders from Canon, her supervisor. Yet, despite these conclusions, ERB curiously went on to hold that Timmerman's actions were not "flagrantly" insubordinate. With regard to leaving the office early, ERB concluded that there was no evidence that Timmerman's absence created any "significant adverse effect" and that there was "no record of prior insubordinate acts." ERB then stated that riding the school band bus in contravention to her supervisor's order was "not intrinsically bad" and that it was "hardly so critical a matter * * * that a first offense would justify the forfeiture of one's job."

■■ Neither of ERB's rationales can withstand scrutiny. The lack of "significant adverse effect" is a red herring. Timmerman's act must be judged in light of what might reasonably have been feared by her supervisor who ordered her to stay—not by the fortuity that her leaving early had no actual adverse consequences to her employer in this case. More importantly, ERB's order nowhere demonstrates why no reasonable employer[5] fairly could have viewed as flagrant insubordination what ERB recognized as Timmerman's transparent ruse to permit her to ride on the band bus. Finally, we cannot understand how ERB can fail to see that any assessment of the District's action has to consider Timmerman's acts *together*, not separately. Even if ERB were correct in concluding that each of Timmerman's acts, viewed separately, was not flagrant insubordination, it has yet even to address, much less explain, why no reasonable employer could consider the two *together* as meeting that standard. Because of these collective insufficiencies in the way ERB reasoned from the facts it found to its legal conclusions, the case must be remanded for further consideration. *See Bremer v. Employment Division,* 47 Or App 1131, 1136, 615 P2d 1170 (1980); ORS 183.482(8)(a).

---

[5] This was the standard utilized by ERB. The parties apparently agree that it is the appropriate one to be applied to this contract. For a full discussion as to the "no reasonable employer" test, *see Brown v. Oregon College of Education,* 52 Or App 251, 254-256, 628 P2d 410 (1981).

Reversed and remanded for reconsideration.[6]

---

[6] Our disposition of this case eliminates the need to discuss petitioner's second assignment of error.