Argued and submitted October 13, 1986, affirmed May 6, reconsideration denied
July 10, petition for review denied August 24, 1987 (304 Or 55)

## OREGON SCHOOL EMPLOYEES ASSOCIATION, CHAPTER 115,
*Respondent,*

*v.*

## PENDLETON SCHOOL DISTRICT 16R,
*Petitioner.*

(ERB C-97-83; CA A38313)

736 P2d 204

Nancy J. Hungerford, Milwaukie, argued the cause and filed the brief for petitioner.

Paul B. Meadowbrook, Salem, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Petitioner (the district) seeks review of a final order of the Employment Relations Board (ERB) which held that the district had violated its collective bargaining agreement with respondent (the union) by dismissing a school secretary for flagrant misconduct. We affirm.

The facts are described in our first opinion in this case. *OSEA v. Pendleton School Dist. 16R*, 73 Or App 624, 699 P2d 1155 (1985). In short, Timmermann, the secretary, violated two instructions from the principal of the high school where she worked: she left at 1 p.m., rather than 2 p.m., on a Friday afternoon to attend a football game in Hillsboro, and she rode back to Pendleton on the band bus with the band director, whom she was dating. The district dismissed her under a provision of the collective bargaining agreement which permitted it to do so if she was guilty of flagrant misconduct.[1] ERB held that Timmermann's actions were not flagrant misconduct and that the district's action therefore violated the agreement. It ordered the district to reinstate Timmermann with back pay, less a five-day suspension. On judicial review we reversed and remanded for ERB to reconsider. It did so, with passing references to shortcomings that it perceived in our opinion, and adhered to its original decision. The district again seeks review.

Violation of a collective bargaining agreement is an unfair labor practice. ORS 243.672(1)(g). ERB has authority to resolve complaints which allege an unfair labor practice and to order affirmative relief if it determines that there was one. ORS 243.676. When the collective bargaining agreement involved does not have a grievance procedure ending in binding arbitration, ERB's responsibilities to construe the agreement and to find the facts are similar to those of an arbitrator.[2] In this case, the first issue which ERB had to

---

[1] The agreement required the district to follow a progressive discipline process for employe problems other than flagrant misconduct.

[2] ERB's role in deciding a case under a collective bargaining agreement is different from its role on review of state agency disciplinary decisions involving unrepresented employes. In the context of a collective bargaining agreement, its function is to determine the intent of the parties. When it considers agency discipline, its purpose is to apply the appropriate statutes. There is no necessary connection between the standards which the legislature has chosen to incorporate into statutes and the stan-

decide was whether Timmermann's actions were "flagrant misconduct," as the agreement used the term. There is no relevant bargaining history or other extrinsic evidence of the parties' intent. Therefore, the meaning of the phrase is solely a question of law.

At the grievance hearing before the school board both the union representative and the district superintendent referred to the definition of "flagrant" in *Webster's Third International Dictionary*. ERB adopted that definition in its opinion:

> "[E]xtremely, flauntingly, or purposefully conspicuous usu. because of uncommon evil, unworthiness, unpleasantness, or truculence: glaringly evident: NOTORIOUS. . . may describe offenses or errors so conspicuously or outstandingly bad that it is impossible not to notice them. . . ."

In a previous case, ERB held that "flagrant misconduct" must "rise above average workaday shortcomings." *OSEA Chapter 139 v. Redland School Dist. 116 and Warren Linville,* 6 PECBR 5260, 5279 (1982).[3] That requirement is inherent in the concept of *flagrant* misconduct. There can be no issue of flagrancy unless there is misconduct first; thus flagrant misconduct must be significantly more serious than ordinary misconduct. We see no reason to disagree with ERB's construction of the term. We also do not believe that ERB's reasoning in this case is inconsistent with its reasoning in *Redland.* "[A]verage workaday shortcomings," as ERB used the phrase in that case, must include misconduct, not simply negligence or inefficiency, because the issue in that case was alleged misconduct.[4]

---

dards which a union and an employer may decide to incorporate into their agreement. Despite that difference, the parties have assumed that the "no reasonable employer" test, which is an explication of the statutory standards, also applies to this collective bargaining agreement. *See OSEA v. Pendleton School Dist. 16R, supra,* 73 Or App at 629 n 5.

[3] As we noted in *OSEA v. Pendleton School Dist. 16 R, supra,* 73 Or App at 628 n 4, the facts in *Redland* are not comparable to the facts in this case. However, the standards for "flagrant misconduct" under the two collective bargaining agreements appear to be similar.

[4] ERB in its decision on remand notes that this is a contractual rather than statutory issue and that the "no reasonable employer" test is inapplicable. "The issue of flagrancy arose under the parties' contract. The question, therefore, was not what a reasonable employer could consider flagrant, but rather what the parties contemplated when they used the term *flagrant* to describe conduct which would, reasonably or not,

The question, then, is whether Timmermann's actions constituted flagrant misconduct. If they did not, the district had no contractual authority to fire her, rather than to impose some lesser discipline. In accordance with our previous opinion, ERB considered the combined effect of Timmermann's misdeeds and concluded that they did not amount to flagrant misconduct. It found neither incident by itself to be uncommonly evil or outstandingly bad.

> "The question, then, is whether Timmermann's actions, taken together, constitute flagrant misconduct under the parties' contract—or more precisely, whether one hour of unauthorized absence and the violation of a direct order (issued for 'public relations reasons') constitute behaviour which is extremely or conspicuously bad or uncommonly evil. In our opinion, neither infraction logically combines with or compounds the seriousness of the other to form a 'flagrant' sum. In so concluding, we have found nothing remotely 'notorious' or 'flaunting' in Timmermann's behaviour on the day in question. Had she announced or otherwise advertised her disobedience, the totality of her conduct might raise a closer question of flagrancy. As it happened, leaving an hour prior to the agreed upon 2 p.m. departure time and riding the band bus (as if a chaperone) were 'offenses' only because they were contrary to instructions which, as far as this record shows, were known only to Timmermann. Based upon the above, we cannot conclude that Timmermann's total conduct was (or could reasonably be) viewed as uncommonly and therefore conspicuously, evil."

As ERB noted, its evaluation of the evidence is different from what we suggested in our previous opinion. However, that evaluation is for ERB, not for us. We may set aside, modify or remand ERB's order only if ERB has erroneously interpreted a provision of law, improperly exercised its discretion or found facts which are not supported by substantial evidence in the record. ORS 183.482(8). ERB's opinion is a carefully reasoned evaluation of the parties' agreement and of the evidence in this case. To the extent that there were evidentiary disputes, ERB resolved them against Timmermann and in favor of the district.

justify immediate dismissal." (Emphasis in original.) In reaching that conclusion in its opinion on reconsideration, ERB withdrew from its apparent acceptance in its first opinion of the parties' use of the "no reasonable employer" test.

Affirmed.[5]

---

[5] The district also challenges ERB's decision to award back pay to the date of the firing, less a five-day misconduct suspension, despite the late filing of the unfair labor practice charge. ERB stated that in future cases it would reduce back pay awards to reflect unreasonable delays in filing the charges. That is a new position, and it was within ERB's discretion not to apply it to cases which arose before the agency announced it.