Argued and submitted October 30, 1989, reversed and remanded for reconsideration February 14, reconsideration denied May 16, petition for review allowed June 5, 1990
(310 Or 121)

OREGON SCHOOL EMPLOYEES
ASSOCIATION, Chapter 89,
*Petitioner,*

*v.*

RAINIER SCHOOL DISTRICT NO. 13,
*Respondent.*

(UP-85-85; CA A50794)

786 P2d 1311

J. Michael Alexander, Salem, argued the cause for petitioner. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

James D. Korshoj, Portland, argued the cause for respondent. With him on the brief were Marianna Kanwit and Bullard, Korshoj, Smith & Jernstedt, P.C., Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Graber, P. J., dissenting.

### EDMONDS, J.

Petitioner seeks review of the Employment Relations Board's (ERB) order denying its unfair labor practice complaint against respondent school district. The district discharged Gamble, a maintenance worker and a member of the bargaining unit represented by petitioner, because of his record of "habitual tardiness." Petitioner alleged that the discharge of Gamble violated Article VII.D of the collective bargaining agreement between petitioner and the district. After ERB initially denied its complaint, petitioner sought review in this court. *OSEA v. Rainier School Dist. 13,* 91 Or App 42, 754 P2d 9 (1988). We remanded so that ERB could consider the effect of Administrative Rule 329e. On remand, ERB again upheld Gamble's discharge. Petitioner seeks review of ERB's latest order. We reverse.

Article VII.D provides, in relevant part:

"No employee covered by this agreement shall be disciplined without just cause. Employees being disciplined shall be afforded due process *as outlined in Administrative Rule 329e* * * *." (Emphasis supplied.)

Administrative Rule 329e provides, in relevant part:

"*Employe Infractions.*

"The following procedure shall be applicable to all employes of District No. 13 who are hired by the Board.

"It is the obligation of the supervisor to observe and document infractions pertaining to the employe's performance in accordance with his/her job description.

"*Procedure*

"1. *All infractions must be made in writing, dated, and a copy placed in the employe's personnel file. The employe shall receive the original copy, and shall be thereby notified of the matter.*

"2. The notification must specifically list the items that are wrong with his/her performance.

"3. Also, the notification should state what measures are being considered if performance does not improve.

"4. The employe must be given an opportunity to a hearing and to refute the charges in writing, including his/her opinion(s) which shall also be placed in the employe's personnel

file." (Footnote omitted; emphasis deleted; emphasis supplied.)

Gamble was employed by the district as a custodian for approximately 12 years. In 1983 and 1984, the district followed the procedure of Rule 329e in notifying him of its concern about his habitual tardiness. In January, 1985, a time clock was installed for his use. Also in January, the district reprimanded him for his absence without authorization for two days and informed him that continued tardiness or absence without authorization would not be tolerated in the future and would "carry the most gravest of consequences." Between January and May, 1985, Gamble continued to arrive at work late on a consistent basis. His tardiness was reflected on his time cards. However, the time cards were not made part of his personnel file, and he received no written warnings. In June, 1985, he was late in arriving at work and was discharged. Petitioner filed a grievance, alleging that the discharge was without cause and in breach of Article VII.

Petitioner relies on Rule 329e, incorporated by reference into Article VII.D, for the requirement that notice of "infractions" be given to employees. It contends that such a notice is required after every act of employee misconduct and concludes that the district did not comply with the rule, because it considered incidents of tardiness occurring between January and May, 1985, without making the time cards part of Gamble's file or otherwise following the rule's requirements. The district argues that the rule does not require that an infraction notice be given after every act of misconduct and that the "infraction" in this case was excessive tardiness, not any single incident of tardiness.

■ ■ ERB's role in deciding an issue under a collective bargaining agreement is different from its role in reviewing a disciplinary decision involving unrepresented employees. In construing the meaning of a collective bargaining agreement as distinguished from applying a statute, its function is to interpret the contract, *i.e.,* to determine the intent of the parties. *OSEA v. Pendleton School Dist. 16R,* 85 Or App 309, 311 n 2, 736 P2d 204 (1980), *rev den* 304 Or 55 (1987). ERB's evaluation of the evidence concerning the parties' intent is binding on us, if it is supported by substantial evidence. ORS 183.482(8). If there is no relevant bargaining history or other

extrinsic evidence of the parties' intent, then the meaning of the agreement is a question of law. *OSEA v. Pendleton School Dist. 16R, supra,* 85 Or App at 312.

■    There is a paucity of extrinsic evidence as to whether the parties intended that the district must give a written notice after each act of misconduct that it might rely on in imposing discipline. The reference to Rule 329e in the bargaining agreement replaced a provision that was a lengthy description of a disciplinary process in which an employee would receive a notice of "deficiencies."[1] After the district informed petitioner that it thought that the provision was unnecessary because of existing policies, petitioner proposed that the provision be replaced with the following reference: "Board Policy adopted April 7, 1981." The district notified petitioner that the proposal was acceptable, except that it wanted to change the reference to "Administrative Rule

---

[1] The replaced provision provided:

"A. No employee covered by this agreement shall be disciplined without due process. Any employee whose performance is judged to not meet district standards shall be placed on a plan of assistance in accordance with the following steps:

"1. The supervisor shall, in a personal conference, meet with the employee to develop a written plan of assistance that shall include:

"a. A statement of deficiencies.
"b. Recommendation for improvement.
"c. Assistance which will be provided.
"d. Conditions under which progress will be evaluated.
"e. Who will do the evaluation.
"f. The timelines involved (A minimum of 2 weeks will be provided.)

"When the employee has demonstrated compliance with stated recommendations to meet performance standards, as determined by the Plan of assistance, the employee shall be notified in writing.

"2. At the discretion of the supervisor an additional period of time may be allowed for the employee to improve deficiencies. If the improvement is not satisfactory, the employee shall be informed, in writing, of the disciplinary action and reasons thereof.

"3. If the employee is in disagreement with the decision rendered, he may file a written appeal to the superintendent within five (5) working days. The appeal will be reviewed by the superintendent, and his decision will be final, except as under provision ORS 342.663.

"4. In accordance with ORS 342.663, any classified employee who has been demoted or dismissed shall be entitled to a hearing before the school board if a written request is filed with the Board within fifteen (15) calendar days of the dismissal or demotion. The Board shall issue a written decision including a statement of the reasons for the decision within 15 days."

329e." The "Board Policy adopted April 7, 1981" and Rule 329e are identical.

It may be that, under the replaced provision, the district would only have been required to give a written notice at the time of discipline and not after each act of misconduct that it might rely on in imposing that discipline. However, Rule 329e cannot be read in the same manner as the replaced provision. The rule states: "It is the obligation of the supervisor to observe and document infractions pertaining to the employee's performance * * *." That language, read along with the remainder of the rule, indicates that a written notice is required after each act of misconduct that the district might rely on in disciplining an employee.[2]

In its order on remand, ERB said:

"We simply do not read Article VII.D to say that the District violates the contract if it chooses not to discipline an employe for a single act of misconduct. The clear language of the article states that due process as outlined in the Rule is to be afforded when an employe is 'being disciplined.' * * * [W]e read, [the rule] as requiring that all disciplinary notices regarding infractions be in writing. *We do not interpret Article VII.D or Rule 329e to require discipline for every alleged act of misconduct.*

"To the extent that the District relied on the employe's tardinesses following the January 16 reprimand, those acts were documented—to the degree required by Rule 329e—in the dismissal letters of June 10, 1985 * * *, and June 27, 1985 * * *. *The employe was terminated for a course of conduct— excessive tardiness from the fall of 1984 through the spring of 1985. The 'infraction' for which he was discharged was not*

---

[2] ERB found that "[i]n the past the District has disciplined [two] other classified employes for being absent from work without giving notice or getting consent." Evidence of the parties' interpretation of the contract after it is entered into is relevant to what they intended it to mean. *Welch v. U.S. Bancorp,* 286 Or 673, 692, 596 P2d 947 (1979). However, even assuming that the district did not give the two disciplined employees written notice after each unauthorized absence (ERB made no express finding in that regard), there is no such evidence here. The first disciplinary action took place in January, 1977, six and one-half years *before* the bargaining agreement went into effect in July, 1983. Regarding the second such action, occurring in 1984, ERB did not find that the disciplined employee asked petitioner to file a grievance, that the employee otherwise contacted petitioner regarding the discipline or that petitioner was otherwise aware of the discipline. Thus, the incident is only evidence of the *district's* interpretation. Further, in 1984, the district gave Gamble a written notice that complied with Rule 329e.

*composed of a single instance of misconduct. The 'infraction' at issue, excessive tardiness, comprised a series of acts of misconduct.* It was that infraction about which the employe had been informed and warned in reprimands that complied with Rule 329e. He then was terminated because his continuation of that course of conduct—excessive tardiness—amounted to another infraction. The dismissal action comported with Rule 329e because the letters were in writing to the employe, they specifically cited excessive tardiness as the reason for the discipline, and the employe was granted a hearing.

"* * * * *

"To summarize, the just cause provision of Article VII.D requires progressive discipline before an employe is discharged for a violation such as tardiness. The Rule 329e component of the Article requires that progressive disciplinary measures, when imposed, comply with the due process provisions of the Rule. As explained earlier, the District conformed with the Rule in each instance of discipline of the employe." (Footnotes omitted; emphasis supplied.)

We agree with ERB that the district does not violate the bargaining agreement if it chooses not to discipline an employee for a single act of misconduct. The agreement requires only that the Rule 329e procedure be followed when the district chooses to rely on an act of misconduct in disciplining an employee. However, ERB's ruling that the agreement is intended to allow the district to discipline an employee based in part on alleged acts of misconduct that have not undergone the procedures of Rule 329e is not supported by substantial evidence nor is it a correct interpretation of the agreement. We reject the district's argument and ERB's conclusion that the district relied on only one "infraction," namely, "excessive tardiness." To accept such an interpretation would frustrate the purpose of the rule, *i.e.,* timely written notice to the employee of allegations of unacceptable behavior and of what the consequences may be if the behavior continues, so that the employee may attempt to rectify the problem or refute the charges. Although Gamble was consistently late for work after January, 1985, he received no written notice, other than the two dismissal letters, that the incidents of tardiness were considered "infractions." The letters were written after Gamble was first notified that he was discharged. They did not constitute timely notice under Rule 329e.

Because the district did not follow the Rule 329e procedure after each incident of tardiness that it relied on in discharging Gamble, it violated the bargaining agreement, an unfair labor practice.

Reversed and remanded for reconsideration.[3]

**GRABER, P. J.,** dissenting.

The majority distorts the parties' contract, apparently in order to achieve what it believes to be the better result. Because that result is not one for which the parties bargained and because the majority applies the wrong standard of review, I dissent.

We stated the issue in the first review in this case, *OSEA v. Rainier School Dist. 13,* 91 Or App 42, 44-45, 754 P2d 9 (1988):

"Petitioner alleged numerous violations of ORS 243.672 in its complaint to ERB. The only allegation which it continues to assert here is that the firing violated Article VII.D of the collective bargaining agreement. *See* ORS 243.672(1)(g). Article VII.D provides, as material:

" 'No employee covered by this agreement shall be disciplined without just cause. Employees being disciplined shall be afforded due process as outlined in Administrative Rule 329e * * *.'

"Administrative Rule 329e provides:

" '*Employe Infractions.*

" 'The following procedure shall be applicable to all employes of District No. 13 who are hired by the Board.

" 'It is the obligation of the supervisor to observe* and document infractions pertaining to the employe's performance *in accordance with his/her job description.*

" '*Procedure.*

" '1. All infractions must be made in writing, dated, and a copy placed in the employe's personnel file. The employe shall receive the original copy, and shall be thereby notified of the matter.

---

[3] Because of our disposition of the case, we do not discuss the other issues raised by the parties.

" '2. The notification must specifically list the items that are wrong with his/her performance.

" '3. Also, the notification should state what measures are being considered if performance does not improve.

" '4. The employe must be given an opportunity to a hearing and to refute the charges in writing, including his/her opinions(s) which shall also be placed in the employe's personnel file.

" '*This procedure is for guidance of supervisors and in no way limits a supervisor's responsibility to investigate and possibly reprimand an employe for an infraction that the supervisor did not personally observe.' (Emphasis in original.)

"Petitioner's sole argument to us is that the district did not comply with Rule 329e and that ERB erred by not so concluding. Specifically, petitioner contends, certain time cards and other documents evidencing particular episodes of Gamble's tardiness were not included in his personnel file or otherwise treated in accordance with the rule. Petitioner argues that each episode was an 'infraction,' subject to the rule's requirements, and that the district's failure to follow those requirements before it discharged Gamble violated Article VII.D, which incorporates the rule by reference."

The majority holds that the district must follow Rule 329e for *each incident* of misconduct on which it relies to discipline an employee. 100 Or App at 516, 520. There are two major flaws in its reasoning.

The first flaw is the majority's decision to treat the issue as "a question of law," because of its assertion that there is "no relevant bargaining history or other extrinsic evidence of the parties' intent." 100 Or App 516. As the majority acknowledges, however, there is *some* evidence; what the majority does is simply discount it and thereby usurp ERB's function. It may not do that. ORS 183.482(8); *OSEA v. Pendleton School Dist. 16R,* 85 Or App 309, 313, 736 P2d 204, *rev den* 304 Or 55 (1987). It is ERB's role in the first instance to interpret the collective bargaining agreement and, if the words are ambiguous, to make findings about the parties' intent. Indeed, petitioner does not claim that ERB's findings lack support in the record.

The original ERB order found facts that relate to the bargaining history behind the reference to Rule 329e and facts

concerning its enforcement. For example, the reference to Rule 329e replaced a lengthy description, which OSEA proposed, of a disciplinary process for an "employee whose performance is judged to not meet district standards"; such an employee would, among other things, receive a "statement of *deficiencies*." (Emphasis supplied.) Moreover, ERB found that, in the past, including once during the life of the same collective bargaining agreement, the district demoted a custodian, because his performance "had slipped *two to three months before the transfer.* [The demoted employee] had specific *problems* with taking extended lunch breaks and leaving the premises for long periods of time without leave." (Emphasis supplied.) If ERB had before it the relevant bargaining and enforcement history of the clause in issue, it is not our function to substitute our judgment for the agency's, even if we would prefer to reach a different result. *Springfield Education Assn. v. School District,* 290 Or 217, 621 P2d 547 (1980); *OSEA v. Pendleton School Dist. 16R, supra.* ERB's findings are supported by substantial evidence, and its reasoning from the facts to its conclusions is rational and complete. Therefore, we must affirm.

Second, even if the majority were correct that we are to interpret the contract anew as a matter of law, its interpretation strains to the breaking point the words that the parties used. The contract requires only that employees who are *"being disciplined* shall be afforded due process as outlined in Administrative Rule 329e." (Emphasis supplied.) In turn, the rule uses the word "infraction" to mean "disciplinary notice"; otherwise, the rule would make no sense. It provides, for instance, that "[a]ll infractions must be made in writing, dated, and a copy placed in the employe's personnel file." In context, "infraction" cannot sensibly be read to mean "episode of misconduct," as the majority wishes to read it. Nothing in the contract requires that the district make all *evidence* of misconduct, such as the time cards, subject to the procedures in Rule 329e. ERB correctly interpreted the contract.

For these reasons, I dissent.