Argued and submitted July 9, 1990, the decision of the Court of Appeals reversed and the Employment Relations Board order after remand affirmed March 21, 1991

# OREGON SCHOOL EMPLOYEES ASSOCIATION,
## Chapter 89,
*Respondent on Review,*

*v.*

# RAINIER SCHOOL DISTRICT NO. 13,
*Petitioner on Review.*

## (ERB UP-85-85; CA A50794; SC S37070)

808 P2d 83

David H. Wilson, Jr., of Bullard, Korshoj, Smith & Jernstedt, Portland, argued the cause and filed the petition for petitioner on review.

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander & McCann, Salem, argued the cause and filed a response to the petition for respondent on review.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

PETERSON, C. J.

## PETERSON, C. J.

This case involves the discharge of a school district employee, Melvin Gamble, by Rainier School District No. 13 (Rainier). Gamble's union, Oregon School Employees Association, Chapter 89 (OSEA), contested Gamble's discharge, claiming that in discharging Gamble, Rainier did not follow a procedural requirement of a collective bargaining agreement between Rainier and OSEA that "[a]ll infractions must be made in writing, dated, and a copy placed in the employe's personnel file."

The case comes to us on judicial review of an order of the Employment Relations Board (ERB). ERB found that Gamble was discharged with "just cause" as required by the terms of the collective bargaining agreement between Rainier and OSEA. ERB also found that the procedural requirements of the above-quoted clause had been met. On judicial review, the Court of Appeals reversed and remanded, stating that the contract clause quoted above requires that "a written notice is required after each act of misconduct that the district might rely on in disciplining an employee" and that ERB's ruling "is not supported by substantial evidence nor is it a correct interpretation of the agreement." *OSEA v. Rainier School Dist. No. 13,* 100 Or App 513, 518-19, 786 P2d 1311 (1990). We granted review to consider the rule of law applicable to ERB in its interpretation of collective bargaining agreements, and whether the Court of Appeals erred in holding that ERB's findings were not supported by substantial evidence.

Article VII, section D of the Rainier-OSEA collective bargaining agreement provides:

"No employee covered by this agreement shall be disciplined without just cause. Employees being disciplined shall be afforded due process as outlined in Administrative Rule 329e adopted July 19, 1983."

Administrative Rule 329e provides:

*"Employe Infractions.*

"The following procedure shall be applicable to all employes of District No. 13 who are hired by the Board.

"It is the obligation of the supervisor to observe and document infractions pertaining to the employe's performance in accordance with his/her job description.

*"Procedure*

"1. All infractions must be made in writing, dated, and a copy placed in the employe's personnel file. The employe shall receive the original copy, and shall be thereby notified of the matter.

"2. The notification must specifically list the items that are wrong with his/her performance.

"3. Also, the notification should state what measures are being considered if performance does not improve.

"4. The employe must be given an opportunity to a hearing and to refute the charges in writing, including his/her opinion(s) which shall also be placed in the employe's personnel file." (Emphasis deleted; footnote omitted.)

ERB determined that the phrase "all infractions must be made in writing" was ambiguous. It concluded that the parties intended that phrase to mean that notice of violations be made in writing, that Rainier's notices to Gamble complied with Administrative Rule 329e, and that the discharge was proper under the collective bargaining agreement.

An understanding of the facts is necessary to decide this case. We therefore summarize in part and quote in part ERB's pertinent findings of fact concerning the reasons for Gamble's discharge.

Gamble was employed as a custodian by Rainier. Jack Scott, Rainier's Facilities Director, was Gamble's supervisor. During the two years before his dismissal, Gamble received a number of written warnings regarding his continued tardiness, including a 1983 and a 1984 evaluation on which "Needs to Improve" appears in the column titled "Begins day and appointed tasks on time."

"By letter dated July 12, 1984, he was informed of the tardiness problem, was given a change in hours for reporting and leaving work, and was warned of the possible installation of a time clock for his use only. This letter constituted a written reprimand and was placed in his personnel file."

"By letter dated November 16, 1984, he was again warned about his habitual tardiness and was told the time clock would be installed. This letter also constituted a written reprimand and was placed in his personnel file."

"By letter dated January 16, 1985, Scott reprimanded Gamble for absence without authorization two days that week. Scott stated [in the letter]:

" '* * * This alone is grounds for dismissal, to say nothing of your continued habitual tardiness.

"* * * * *

" 'Any further deviations of this procedure will carry the most gravest [sic] of consequences.' "

On June 5, Scott again discussed with Gamble the problem of Gamble's habitual tardiness. Then, on June 6,

"Scott arrived at work * * * at approximately 6:00 a.m. He turned on the main power switch, checked the pump switches and observed that the pump was not working and that no water was entering the tank. Scott * * * contacted the fire department to determine if it was possible to have water delivered to the school. At approximately 7:00 a.m. the fire chief notified Scott they could send a tank truck with water * * *. Starting at 7:00 a.m., pursuant to Scott's instructions, Gamble was paged every five minutes."

Gamble was scheduled to begin work at 7:00 a.m. He arrived sometime between 7:20 and 7:30 a.m. "He turned on the switch he had turned off the night before, starting the pump. This took only a few minutes. Gamble then left to take his son to school." He did not return to work until 8 a.m.

Gamble met with Scott and Brunquist, Rainier's superintendent, at 2 p.m. on June 7. Brunquist told Gamble that Brunquist "had no choice but to dismiss him effective at the end of his earned vacation. By letter dated June 10, 1985, Brunquist notified Gamble that he was dismissed effective July 2, 1985." The letter stated in part:

"You are being dismissed for the following reasons:

"I have found clear evidence that you have been duly warned in writing on November 16, 1984 and January 16, 1985 that your tardiness will not be tolerated. You have also been tardy as shown on the attached time card records that we discussed last Friday.

"The fact that you make up the time does not excuse your tardiness. Tardiness to work is not acceptable."

On June 17, 1985, OSEA filed a grievance with Rainier on Gamble's behalf. On June 26, 1985, the Rainier

Board of Directors conducted a hearing on Gamble's dismissal, heard witnesses, and voted to affirm Brunquist's decision to terminate Gamble. Gamble was notified of the Directors' decision by letter dated June 27, 1985.

The decision in this case turns on whether Rainier, in dismissing Gamble, followed the disciplinary procedures contained in the Rainier-OSEA collective bargaining agreement. That issue came to a head, not at ERB's first hearing, but on OSEA's first appeal to the Court of Appeals. At the first hearing, ERB concluded that Rainier complied with the procedural requirements of the collective bargaining agreement. OSEA sought judicial review asserting that the dismissal of Gamble did not comply with those requirements. The Court of Appeals remanded the case to ERB to "decide whether Rule 329e is applicable here and, if so, how it applies and whether its requirements or their functional equivalent were followed." *OSEA v. Rainier School Dist. 13,* 91 Or App 42, 46, 754 P2d 9 (1988).

On remand from the Court of Appeals, ERB considered Administrative Rule 329e and upheld the discharge. OSEA again sought judicial review. The Court of Appeals again reversed and again remanded for reconsideration, stating that the contract clause quoted above directs that "a written notice is required after each act of misconduct that the district might rely on in disciplining an employee" and that ERB's ruling "is not supported by substantial evidence nor is it a correct interpretation of the agreement." *OSEA v. Rainier School Dist. No. 13, supra,* 100 Or App at 518-19.

ORS 183.482 governs judicial review of an agency order, including an ERB order, in a contested case:

"(8)(a)  The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A)  Set aside or modify the order; or

"(B)  Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *

"(c)  The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence

in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

We hold that ERB applied the correct rule of law in interpreting the collective bargaining agreement, and that there is substantial evidence in the record to support its order. We therefore reverse the decision of the Court of Appeals and affirm ERB's order.

ERB was required (1) to interpret the meaning of the term "all infractions must be made in writing," as used in Administrative Rule 329e, and (2) to decide whether Rainier complied with the collective bargaining agreement in discharging Gamble. Whether ERB correctly interpreted the contract turns on a question of law, what rule of law applies to ERB when it interprets collective bargaining agreements. The answer to the second question turns on whether ERB's order on remand is "supported by substantial evidence in the record." ORS 183.482(8)(c). We now discuss the rule of law that applies in interpreting collective bargaining contracts.

A collective bargaining agreement is one type of contract. The general rule applicable to the construction of contracts is: Unambiguous contracts must be enforced according to their terms. *Bruner v. Oregon Baptist Home,* 208 Or 502, 506, 302 P2d 558 (1956); *City of Reedsport v. Hubbard et ux,* 202 Or 370, 385, 274 P2d 248 (1954). Whether the terms of a contract are ambiguous in the first instance is a question of law. *Evenson Masonry, Inc. v. Eldred,* 273 Or 770, 772, 543 P2d 663 (1975). If a contract is ambiguous, the trier of fact will ascertain the intent of the parties and construe the contract consistent with the intent of the parties. *Investment Service Co. v. Smither,* 276 Or 837, 843, 556 P2d 955 (1976).

ORS 243.676 vests ERB with the responsibility to investigate and decide whether "any person has engaged in or is engaging in any unfair labor practice listed in ORS 243.672(1) and (2)." ORS 243.672(1)(g) makes it an unfair labor practice for a public employer to "[v]iolate the provisions of any written contract with respect to employment relations." In discharging its statutory responsibility, ERB is required to interpret collective bargaining agreements. It should do so in the same manner and pursuant to the same rules of construction as do courts. *See generally Mastro*

*Plastics Corp. v. Labor Board,* 350 US 270, 279-84, 76 S Ct 349, 100 L Ed 309 (1956) (affirming the National Labor Relations Board's interpretation of a provision in a collective bargaining agreement, applying the same, generally applicable common law contract interpretation construct as did the NLRB). The inquiry therefore turns to this question: Is the contract between Rainier and OSEA (which incorporates Administrative Rule 329e by reference) ambiguous? If it is, it should be interpreted according to the rules set forth above. We turn to those questions.

■    Administrative Rule 329e directs that, among other things, "all infractions must be made in writing, dated, and a copy placed in the employe's personnel file," with the "original copy" sent to the employe. ERB determined that this provision contains two ambiguities, but that the parties' intent is apparent from other terms of the contract and from the parties' negotiations. We agree that the provision is ambiguous in two respects. The first concerns the meaning of the word "infraction;" the second concerns the documentation of infractions.

■    Article VII, section D of the collective bargaining agreement requires that "[e]mployees being disciplined shall be afforded due process as outlined in Administrative Rule 329e." The heart of procedural due process is (1) notice of the charge and (2) an opportunity to be heard. *See Tupper v. Fairview Hospital,* 276 Or 657, 662, 556 P2d 1340 (1976). Administrative Rule 329e addresses the procedural requirements of notice and a hearing, albeit not altogether clearly. Paragraphs 1 through 3 concern notice of the violations and discipline, and set forth the information that the employe is entitled to receive. Paragraph 4 concerns the employe's right to a hearing regarding those charges.

Notice to the employe of violations that Rainier considers deserving of disciplinary action is a central feature of the disciplinary process. The wording of Paragraph 1, that "[a]ll infractions must be made in writing," does not make this concept clear. As written, the phrase suggests that the employe's act of misconduct must itself be in writing, rather than the notice of the violation provided to the employe. It would be remarkable indeed if the infraction itself could be written, dated, copied and filed, with the original sent to the

employee. Unlike the use of the term "infractions" in another section of Administrative Rule 329e, namely, "[i]t is the obligation of the supervisor to *observe and document infractions,*" (emphasis added), the word "infractions" in paragraph 1 must mean that all notices of violations meet the procedural requirements of paragraphs 2 and 3 of the rule, and that they be set forth in writing. ORS 174.010 ("where there are several provisions *.* * construction is * * * to be adopted as will give effect to all"); *Rosentool v. Bonanza Oil and Mine Corp.,* 221 Or 520, 527, 352 P2d 138 (1960). Paragraph 2 requires that the written notice "specifically list the items that are wrong with his/her performance," *i.e.,* the violations, and the third paragraph requires a statement of contemplated discipline.

Another ambiguity in the Rainier-OSEA agreement also involves the phrase "all infractions must be made in writing, dated, and a copy placed in the employe's personnel file." OSEA contends that Administrative Rule 329e requires each and every infraction on which Rainier intends to rely in determining disciplinary action against an employee to be documented separately in conformity with Administrative Rule 329e. Rainier, on the other hand, maintains that Administrative Rule 329e permits notices to contain reference to more than one act of misconduct, *e.g.,* continuing tardiness. Thus, the question is: What did the parties intend when they incorporated this provision into the collective bargaining agreement? *Engesether v. Baunach,* 274 Or 153, 158, 545 P2d 110 (1976).

The record contains evidence and ERB made findings of fact regarding the negotiations that led to the inclusion of Administrative Rule 329e in the agreement, and the previous conduct of the parties under the rule. ERB found that OSEA originally proposed a disciplinary clause that required Rainier to provide the employee with "[a] statement of deficiencies." Rainier responded that it did not reject the essence of the proposal but thought the proposed clause lengthy and unnecessary in light of existing policies. OSEA then proposed that the "[Rainier] Board Policy adopted April 7, 1981" be substituted in place of the disciplinary clause. Rainier agreed, but requested that reference be made to Administrative Rule 329e rather than the "Board Policy" since the texts of both were identical.

■       ERB found that the Article VII, section D reference to Administrative Rule 329e was in contemplation of "progressive discipline, * * * which requires that the employe be informed about possible future disciplinary measures, where any are being considered." ERB also found:

> "Concerning progressive discipline, Rule 329e adds nothing to the general requirements of just cause, except that disciplinary actions must be memorialized in writing and the warning to the employe concerning 'the discipline ultimately imposed' must also be in writing." (Footnote omitted.)

In addition, ERB found that Gamble was notified in writing on July 12, 1984, November 16, 1984, and January 16, 1985, *see* 311 Or at 191-92, that his continuing tardiness was unacceptable, and that disciplinary action would result if Gamble continued to arrive late to work.

ERB concluded that Gamble was dismissed based on a course of conduct, that he was given progressive discipline, and that the disciplinary notices sent to Gamble complied with the contract provisions as intended by the parties. The order states:

> "The employe was terminated for a course of conduct — excessive tardiness from the fall of 1984 through the spring of 1985. The 'infraction' for which he was discharged was not composed of a single instance of misconduct. The 'infraction' at issue, *excessive* tardiness, comprised a series of acts of misconduct. It was that infraction about which the employe had been informed and warned in reprimands that complied with Rule 329e. He then was terminated because his continuation of that course of conduct — excessive tardiness — amounted to another infraction. The dismissal action comported with Rule 329e because the letters were in writing to the employe, they specifically cited excessive tardiness as the reason for the discipline, and the employe was granted a hearing." (Emphasis in original.)

■       Based on the record as a whole, there is sufficient evidence to support ERB's finding that the incorporation by reference of Administrative Rule 329e was intended to require notices informing the employee of misconduct that may lead to disciplinary action if not discontinued, that each notice may refer to more than one singular act of misconduct, that only that misconduct of which the employee has been notified in accordance with Administrative Rule 329e may be relied on when taking disciplinary action, and that the notices

sent by Rainier to Gamble complied with Administrative Rule 329e as referred to in the Rainier-OSEA collective bargaining agreement.[1]

■     OSEA advanced a similar argument concerning another clause in the contract. Article IV, section D of the collective bargaining agreement in part provided:

> "The personnel records of each employee in the bargaining unit shall be maintained in the District office. No information of a critical nature, (i.e., a warning, reprimand, evaluation, parental complaint, etc.), shall be placed in an employee's personnel file unless the employee has had an opportunity to review the material and sign or initial the copy to be filed. * * *
>
> "* * * * *
>
> "Material placed in the personnel record of an employee without conformity with the provisions of this agreement will not be used by the Board in any subsequent evaluation or disciplinary procedure involving the employee."

OSEA contends that by dismissing Gamble in part for Gamble's repeated tardiness during the spring of 1985, Rainier violated Section D of the collective bargaining agreement because Gamble's timecards documenting his tardiness during that period were not placed in Gamble's personnel file. In addition, OSEA argues that because written notices of discipline were not furnished to Gamble regarding those tardy arrivals, Rainier could not rely on those instances of misconduct when determining Gamble's discipline.

Section D concerns putting "information of a critical nature (i.e., a warning, reprimand, evaluation, parental complaint, etc.)" in an employee's personnel file. Section D appears to echo the requirement of Administrative Rule 329e, requiring notice to the employee before such things as "warnings" or "reprimands" that may influence future disciplinary decisions are placed in the file.

---

[1] The Court of Appeals also added the notion of "timely notice" in its reading of Administrative Rule 329e. *OSEA v. Rainier School Dist. No. 13,* 100 Or App 513, 519, 786 P2d 1311 (1990). Administrative Rule 329e does not state that disciplinary notice to the employee must be "timely." Without deciding here what constitutes timeliness, we agree that the purpose of the rule and the intent of the contracting parties must include this notion. Rainier's notice to Gamble of continual tardiness was in all cases timely given.

ERB did not read Section D of the collective bargaining agreement to require that Gamble's timecards be placed in his personnel file. As noted above, ERB concluded that the bargaining agreement allowed for notices of violations to embrace more than one singular act of misconduct, *i.e.*, a continuing course of conduct, and that it was appropriate for the June 10 letter to combine the reference to the numerous and persistent tardy arrivals subsequent to the January reprimand into one notice.[12] ERB's conclusions are not unreasonable, and they are consistent with earlier conduct of the parties on previous occasions, conduct referred to by ERB in its order. There is substantial evidence to support ERB's finding.

In sum, the collective bargaining agreement in this case is ambiguous. Therefore, ERB was required to, and did, construe the contract consistent with the intent of the contracting parties. In so doing, it applied the correct rule of law. It did not "erroneously interpret a provision of law." ORS 183.482(8)(a).

There is substantial evidence in the record to support ERB's findings of fact with respect to the intent of the parties. That intent — to require notice of conduct subject to disciplinary action, conforming to the notice described in Administrative Rule 329e — is also consistent with the more sensible reading of the provisions of the contract itself. The interpretation of the contract contained in ERB's order on remand, therefore, is supported by substantial evidence in the record.

There is also substantial evidence in the record to support ERB's findings of fact that the notices provided to Gamble complied with the contract requirements, and its conclusion that the misconduct, duly noticed, constituted just cause for discharge. ERB's order on remand is, therefore, supported by substantial evidence in the record, and we affirm it. ORS 183.482(8)(c).

---

[2] ERB's order states:

"To the extent that the District relied on the employe's tardinesses following the January 16 reprimand, those acts were documented — to the degree required by Rule 329e — in the dismissal letters of June 10, 1985 (Exhibit C-14), and June 27, 1985 (Exhibit C-7)."

The decision of the Court of Appeals is reversed. The Employment Relations Board "order after remand" is affirmed.