43 P.3d 1187 (2002)
180 Or. App. 461
JOSEPH EDUCATION ASSOCIATION/OEA/NEA, Respondent,
v.
JOSEPH SCHOOL DISTRICT NO. 6, Petitioner.
UP-46-98; A110608
Court of Appeals of Oregon.
Argued and Submitted July 9, 2001.
Decided April 10, 2002.
*1188 Raymond S. Baum, La Grande, argued the cause for petitioner. With him on the brief were Julie E. Smith and Mautz Baum & O'Hanlon, LLP.
Thomas K. Doyle argued the cause for respondents. With him on the brief was Smith, Gamson, Diamond & Olney.
Before LANDAU, Presiding Judge, and BREWER and SCHUMAN,[*] Judges.
LANDAU, P.J.
The Joseph Education Association/OEA/NEA (the association) filed an unfair labor practices complaint before the Employment Relations Board (ERB) against Joseph School District No. 6 (the district), asserting that the district had committed an unfair labor practice by refusing to arbitrate two grievances filed by a probationary teacher. The district argued that ERB lacked jurisdiction over the dispute and that the dispute was not subject to arbitration. ERB concluded that it had jurisdiction, that the disputes were arbitrable, and that, in consequence, the district had committed an unfair labor practice. The district now seeks review, assigning error to ERB's conclusions that it has jurisdiction over the disputes and that they are subject to arbitration. We affirm.
The relevant facts are not in dispute. The association and the district were parties to a collective bargaining agreement. Among other things, the agreement sets forth a detailed grievance procedure. A "grievance" is defined as "an allegation by a certified employee that there has been a violation involving the interpretation and/or application of the specific terms of this agreement." The grievance process includes several levels, beginning with an informal dispute resolution process and proceeding to a formal process. At what is denominated "Level III," if the grievance has not been resolved, the association may submit the dispute to arbitration. Concerning arbitration, the agreement provides in Article III:
"The arbitrator's decision shall be in writing and shall set forth the findings of fact, reasoning and conclusions on issues submitted. The arbitrator shall be without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this Agreement. The arbitrator shall have no power to substitute his or her judgment for that of the Board [of Education of Joseph School District No. 6] on any matter not specifically contracted away by the Board in this Agreement. The decision of the arbitrator within the scope of his or her authority shall be binding upon the parties."
The agreement also contains provisions concerning the rights of professional employees and disciplinary procedures. The provisions relating to disciplinary procedures include the following from Article V:
"Section C-Disciplinary Procedures

"1. No permanent (non-probationary) teacher shall be disciplined or dismissed without just cause. In the event the teacher appeals his/her dismissal, the right of appeal shall be limited to the procedures set forth in the Oregon Fair Dismissal law or the procedures set forth in Article III of this Agreement, but not both.
"2. A probationary teacher who is nonrenewed or dismissed shall be in accordance with the procedures set forth in ORS 342.835 and any appeal by the teacher is limited to the procedures set forth in that statute." *1189 ORS 342.835(3) provides that an appeal of a district decision to refuse to renew or to dismiss a probationary teacher may be taken to the circuit court.
In August 1997, the district hired Robert Emminger as a probationary music teacher. Sometime during the school year, the district received parental complaints about Emminger's classroom performance. On February 10, 1998, the district decided not to renew Emminger's contract. The district explained that it based its decision on "an allegedly significant decline in enrollment in Emminger's high school music class." On April 2, 1998, Emminger filed a written grievance alleging that the district "improperly placed documents in [his] personnel file and took adverse action prior to the evaluation of [Emminger] based on improperly processed parent complaints." According to Emminger, the district's actions violated the collective bargaining agreement in 17 different ways, among them failing to "attempt an informal resolution" of one of the parental complaints, denying him the right to respond to certain parental complaints, failing to "follow the complaint procedure" in scheduling meetings to hear parental complaints and in inviting parents to attend meetings to present additional complaints, encouraging parents to report their complaints directly to board members without referring the parents to the contractual complaint procedure, failing to "process complaints in a timely manner," denying Emminger his right of confidentiality in the complaint process, violating the public meeting statutes, failing to evaluate him, and failing to offer him a contract for the next school year. He requested an apology from the district for the embarrassment caused by the improper processing of complaints. He also requested the purging of parental complaints and related documents from his personnel file and reinstatement for the 1998-99 school year.
On April 27, 1998, the district terminated Emminger's employment "because of alleged misrepresentations on his teaching application." On May 12, 1998, the association filed a letter asserting a grievance on Emminger's behalf. The letter stated that Emminger's termination was based on parental complaints that the district had failed to process in accordance with the terms of the collective bargaining agreement and that the termination occurred without notice or implementation of a plan of assistance, as the agreement requires. As a remedy, the grievance letter requested reinstatement and removal of references to the termination from Emminger's personnel file.
The district consolidated the April 2 and May 12 grievances. It eventually refused to arbitrate the grievances on the ground that they are not subject to arbitration. According to the district, because the grievances sought, among other things, Emminger's reinstatement, they were essentially challenges to his nonrenewal and termination, which are nonarbitrable under Article V, section C(2), of the collective bargaining agreement, which provides that such grievances may be challenged in circuit court.
On September 21, 1998, the association filed a complaint before ERB, alleging that the district committed an unfair labor practice in failing to arbitrate the April 2 and May 12 grievances. ORS 243.672(1)(g). The district filed an action for declaratory and injunctive relief in Wallowa County Circuit Court against Emminger and the association, asking the court to declare that ERB lacks jurisdiction over the dispute. The district argued that, because the grievances requested, among other things, reinstatement, they were not subject to arbitration as provided in Article V, section C(2), of the collective bargaining agreement. The court held in favor of Emminger and the association, concluding that ERB has jurisdiction over the grievances. The district appealed, and, in a per curiam decision, we affirmed. Joseph Sch. Dist. No. 6 v. Joseph Education Assn., 171 Or.App. 466, 15 P.3d 625 (2000), rev. den. 332 Or. 239, 28 P.3d 1174 (2001).
Meanwhile, the parties submitted the matter to a hearing officer on stipulated facts. The hearing officer issued a proposed order, concluding that ERB had jurisdiction, that the grievances were subject to arbitration, and that the district had engaged in an unlawful labor practice. The district objected to the proposed order. ERB confirmed that it had jurisdiction, that the grievances were *1190 subject to arbitration, and that the District had engaged in an unlawful labor practice. ERB reasoned that, although the collective bargaining agreement provides that challenges to nonrenewal and termination are not subject to arbitration, the April 2 and May 12 grievances did not directly challenge the district's nonrenewal and termination decisions. Instead, both grievances expressly complained about numerous violations of the collective bargaining agreement complaint and evaluation procedures, matters that are nowhere in the agreement excluded from arbitration.
On review, the district first assigns error to ERB's conclusion that it has jurisdiction. According to the district, the gravamen of both the April 2 and the May 12 grievances is the nonrenewal and termination of Emminger, and, under Article V, section C(2), of the collective bargaining agreement, such disputes are subject to review by the circuit court only. We addressed precisely that question in Joseph Sch. Dist. No. 6 and decided it adversely to the district. No further discussion of that assignment is required.
The district next argues that ERB erred in concluding that, by refusing to arbitrate the two grievances, the district engaged in an unfair labor practice. According to the district, because both grievances challenge Emminger's nonrenewal and termination, they are not subject to arbitration. The district reasons that Article III of the collective bargaining agreement provides that the arbitrator lacks the power to make any decision that violates the terms of the agreement, and Article V, section C(2), expressly provides that challenges to nonrenewal and termination decisions are not subject to arbitration, but, instead, are subject to review by the circuit court alone. The association responds that, because the grievances challenged not the nonrenewal and termination decisions but rather the violations of contractual complaint and evaluation procedures, ERB correctly concluded that the district had engaged in an unfair labor practice in refusing to arbitrate them.
A collective bargaining agreement is a contract, which we must interpret in the same manner as other contracts. OSEA v. Rainier School Dist. No. 13, 311 Or. 188, 194, 808 P.2d 83 (1991). To interpret disputed contractual provisions, we examine the text of the disputed provision in the context of the agreement as a whole. Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997). In reviewing the text in its context, we first must determine whether, as a matter of law, the disputed provision is unambiguous; if so, our review is at an end, and we enforce the unambiguous provisions according to their terms. Rainier School Dist. No. 13, 311 Or. at 194, 808 P.2d 83. A provision is "ambiguous" if it is reasonably capable of more than one construction. North Pacific Ins. Co. v. Hamilton, 332 Or. 20, 25, 22 P.3d 739 (2001). If we conclude that the disputed provision is ambiguous, then we "examine extrinsic evidence of the contracting parties' intent," if available. Yogman, 325 Or. at 363, 937 P.2d 1019. If ambiguity persists, we resort to appropriate maxims of construction. Id. at 364, 937 P.2d 1019. In the context of an agreement to arbitrate, one such maxim of construction is that any doubts about arbitrability are resolved in favor of arbitration. See, e.g., Snow Mountain Pine, Ltd. v. Tecton Laminates Corp., 126 Or.App. 523, 529, 869 P.2d 369, rev. den. 319 Or. 36, 876 P.2d 782 (1994) ("we resolve all doubts in favor of coverage" by an arbitration clause).
In this case, the collective bargaining agreement broadly provides for arbitration of "grievances," which are defined as allegations raised by a "certified employee that there has been a violation involving the interpretation and/or application of the specific terms of this Agreement." Nothing in the collective bargaining agreement suggests that arbitrable disputes are limited to those raised by nonprobationary teachers. To the contrary, the agreement refers to disputes raised by any "certified employee." No one in this case has suggested that probationary teachers are anything other than certified employees. Nor does the agreement limit the arbitrability of disputes to those advanced by teachers who later were not nonrenewed or terminated. The agreement apparently contemplates that, as long as the subject of the grievance involves interpretation *1191 or application of its terms, the grievance is subject to arbitration.
There is no question but that the April 2 and May 12 grievances state allegations involving the interpretation and application of specific terms of the collective bargaining agreement. They identify more than a dozen separate violations of the parental complaint and teacher evaluation procedures spelled out in the agreement.
The district nevertheless insists that, under Article III and Article V, section C(2), neither grievance is subject to arbitration. We disagree. Article III merely provides that the arbitrator must exercise his or her authority in a manner consistent with the agreement as a whole. It imposes no independent restriction on the otherwise broad scope of the arbitration provisions of the agreement. As for Article V, section C(2), it provides that a probationary teacher must appeal a decision not to renew or to dismiss with the circuit court, in accordance with the procedures set forth in ORS 342.835. Reliance on Article V, section C(2), however, assumes the very question in dispute, namely, whether the grievances amount to appeals of a decision not to renew or to dismiss.
A grievance does not amount to an appeal of a nonrenewal or dismissal decision merely because it mentions the fact of nonrenewal or dismissal or even because it includes, as one of the remedies requested, the reinstatement of the employee. Instructive in that regard is this court's decision in N. Clackamas Sch. Dist. v. N. Clackamas Educ. Assn., 54 Or. App. 211, 634 P.2d 1348 (1981). In that case, the collective bargaining agreement contained numerous provisions concerning teacher performance evaluation and provided for arbitration of disputes involving the "[i]nterpretation, meaning, or application of a specific term or provision of the collective bargaining agreement." Id. at 216 n. 5, 221, 634 P.2d 1348. When the school district decided not to renew the employment of Yambasu, a probationary teacher, the association representing her filed a grievance, alleging that the nonrenewal resulted from violations of the provisions in the agreement concerning the professional evaluation process and demanding arbitration.
The school district refused to enforce an arbitration award ordering reinstatement, arguing that challenges to nonrenewal and dismissal decisions are not subject to arbitration. ERB concluded that the grievance did not amount to a challenge of the nonrenewal decision itself and ordered reinstatement. We affirmed, explaining:
"In contrast to the District's characterization of the issue, [Yambasu] did not challenge the merits of the nonrenewal decision. Her dismissal or nonrenewal was at issue only insofar as it resulted from the allegedly arbitrary evaluations. The arbitrator was asked only to examine the process of evaluating Yambasu's teaching performance. He was not asked whether, on the merits, she had performed satisfactorily. Such limited review of the District's action * * * was a proper subject for binding arbitration."
Id. at 221-22, 634 P.2d 1348 (emphasis in original).
In this case, the April 2 and May 12 grievances certainly refer to the decision to dismiss Emminger, and they do request reinstatement. But, as in North Clackamas, a review of those grievances makes clear that the dismissal decision is at issue, if at all, only to the extent that it resulted from the various alleged violations of parental complaint and teacher evaluation procedures set forth in the collective bargaining agreement. We conclude that Article V, section C(2), does not preclude the arbitration of the April 2 and May 12 grievances. ERB therefore correctly determined that the grievances were arbitrable and that, because the district had refused to submit to arbitration, it had engaged in an unfair labor practice.
Affirmed.
NOTES
[*] Schuman, J., vice Warren, S.J.