Argued and submitted February 10, affirmed December 15, 2004

# ARLINGTON EDUCATION ASSOCIATION, *Respondent,*

*v.*

# ARLINGTON SCHOOL DISTRICT NO. 3, *Petitioner.*

## UP-65-99; A118084

103 P3d 1138

Bruce Zagar argued the cause for petitioner. With him on the briefs was Paul A. Goodwin.

Ralph E. Wiser argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Ortega, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Petitioner Arlington School District No. 3 (district) seeks judicial review of an Employment Relations Board (ERB) order compelling it to arbitrate a grievance filed by the Arlington Education Association (association). The dispute arose from the district's action of relieving a union member of his duties as athletic director. This matter has already led to two reported decisions from this court, *Arlington Ed. Assn. v. Arlington Sch. Dist. No. 3*, 177 Or App 658, 34 P3d 1197 (2001), *rev den*, 333 Or 399 (2002), and *Arlington Sch. Dist. No. 3 v. Arlington Ed. Assoc.*, 184 Or App 97, 55 P3d 546 (2002). In the former decision, we remanded the matter to ERB, holding that ERB had erred in considering a document that was not submitted in evidence at the hearing on the grievance but that appeared elsewhere in the ERB contested case record. On remand, ERB again ordered the district to arbitrate, and the district again sought judicial review of that order in this court. The district also sought a stay of the order pending judicial review and, in the second of our previous opinions in this case, we denied the stay. We now address whether ERB erred on remand in ordering the district to arbitrate the grievance. Reviewing ERB's order for substantial evidence and for errors of law, ORS 183.482(8), we affirm.

We take the facts from our previous opinions in this case, the record, and ERB's order. The whole megillah[1] began when the district dismissed Norm Cox from his position as the district's athletic director. Cox filed a grievance with the district, alleging that the dismissal was without just cause, in violation of the collective bargaining agreement (CBA) between the association and the district. Cox requested that the district "process the grievance to binding arbitration." When the district had not done that, the association filed a complaint with ERB in which it asserted that the district had committed an unfair labor practice under ORS 243.672(1)(g) by, among other things, failing to "process the grievance to arbitration."[2]

---

[1] "A long * * * or complicated story." *The New Shorter Oxford English Dictionary* 1734 (1993).

[2] ORS 243.672(1)(g) provides, in part, that "[i]t is an unfair labor practice for a public employer or its designated representative to * * * [v]iolate the provisions of

In its answer, the district denied that the CBA contained, "either expressly or by reference, a grievance procedure." It also denied, specifically and generally, the association's other allegations regarding the Cox dispute. As what it termed "affirmative defenses," the district asserted that it had "no duty to arbitrate under" the CBA, that there was "no just cause provision in" the CBA, and that the Cox grievance was "not subject to arbitration[.]"

An administrative law judge (ALJ) conducted a hearing at which the parties presented exhibits, testimony, and argument. After the ALJ recommended that the association's complaint be dismissed, the association objected to the ALJ's recommendation, findings of fact, conclusions of law, and proposed order. The parties then submitted additional briefing to ERB, and ERB heard oral argument on the matter. As noted above, ERB—with one member concurring and one dissenting—ordered the district to arbitrate the Cox grievance. And, as also noted above, we reversed that order and remanded to ERB for reconsideration. On reconsideration, ERB again ordered the district to arbitrate. In explaining its order, ERB concluded that (1) the district had an obligation to arbitrate under the CBA and (2) the district refused to do so in violation of ORS 243.672(1)(g). On review, the district attacks both of those rulings.

In its first assignment of error, the district takes issue with ERB's conclusion that it refused to arbitrate, asserting that ERB erred in "shift[ing] the burden of proving a refusal to arbitrate from the Association to the District based solely on a self-serving hearsay document created by the Association itself." It also argues that ERB's finding that the district refused to arbitrate is not supported by substantial evidence. The association responds that the district's burden-shifting argument is unpreserved, that ERB did not in fact shift the burden of proof, and that, in all events, substantial evidence supports ERB's finding that the district refused to arbitrate. As explained below, however, we need not address those arguments, as we resolve the district's first assignment of error on a different ground.

---

any written contract with respect to employment relations including an agreement to arbitrate[.]"

■ After oral argument, the association moved to dismiss the appeal as moot. One basis for the association's motion was that the parties had already arbitrated the dispute in accordance with ERB's order.[3] The association's other argument for dismissal was that the CBA in question had been succeeded by another CBA. The district opposed the motion, arguing that a reversal from this court "would have the effect of invalidating the arbitrator's decision." The parties did not address whether any portion of the appeal had become moot; rather, they argued only the mootness of the entire appeal. By order, we denied the association's motion to dismiss, in part because the issue remains whether the district was required to arbitrate the Cox grievance under the CBA. We did not address whether any specific issue in the case has now become moot, as to do so was not necessary to resolve the motion to dismiss the entire appeal.

■ We now conclude that whether the district initially refused to arbitrate the Cox grievance is no longer an issue, as the arbitration has taken place. If this court determines that the district had a duty to arbitrate, the arbitrator's award will stand. Conversely, if we were to conclude that the district had no duty to arbitrate, whether the district initially had refused to do so would be of no moment. Accordingly, any resolution of that issue by this court would have no practical effect on the parties. *Cf. Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1991) (whether a case is moot depends in part on whether "the court's decision in the matter will have some practical effect on the rights of the parties"). Because whether the district refused to arbitrate is moot, we do not address that issue further. In contrast, whether the district was required to arbitrate under the CBA is not moot, because our decision on that issue may have a practical effect. Accordingly, we turn to that inquiry.

---

[3] The association attached the arbitrator's opinion and award to its motion; the district did not dispute that the matter had been arbitrated or that the opinion and award were authentic. We may consider the arbitrator's opinion and award in determining whether an issue is moot. *See First Commerce of America v. Nimbus Center Assoc.*, 329 Or 199, 206, 986 P2d 556 (1999) ("If a case is not justiciable because an event that is not reflected in the circuit court record has rendered the case moot, an appellate court has the inherent power to consider evidence of that event.").

We begin with the relevant terms of the 1997-2000 CBA and related documents. That CBA provides, in part:

"Article III
Status of the Agreement

"The Board of Education recognizes the Association as the sole and exclusive representative for probationary/ contracted licensed teachers employed or to be employed by the District in matters of salaries and related economic policies affecting professional services.

"This agreement shall modify, replace, or add to any policies, rules, regulation[s], procedures or practices of the district which shall be contrary to or inconsistent with its terms. The provisions of this agreement shall be incorporated into and become part of the District. [*sic*] Existing policies, rules, regulations, practices and procedures or practices not covered by this agreement. [*sic*]

"* * * * *

"Article X
Working Conditions

"A.   Just Cause

"The Just Cause provision shall be in district policy. The Just Cause policy shall not be changed during the length of this contract without mutual written agreement.

"* * * * *

"F.   Complaint Procedure

"The parties recognize the [*sic*] complaints may be made against district employees. A complaint is a negative criticism about the employee. It is the intent of this procedure to resolve complaints fairly at the lowest possible level.

"1.   Once a complaint regarding an employee's performance is brought to the building supervisor's attention, the employee will be notified within five (5) working days.

"2.   The employee may choose to discuss the complaint informally with the complainant and with/without the building principal present. Complaints resolved at this level shall not be considered in employee evaluation.

"3.   If the complaint is not resolved, and the administrator intends to make any record of the complaint, the complaint will be reduced to writing and signed by the complainant. Oral complaints shall not be considered.

"4.   The employee is entitled to all pertinent information about the complaint.

"5.   *Any action taken against the employee shall be reasonable and may be appealed through the grievance procedure.*"

(Emphasis added; underscoring in original.)

The district had a policy, referred to as the "GBM policy," that addressed complaints:

### "STAFF COMPLAINTS

"The superintendent or designee will develop a complaint procedure which will be available for all employees who contend they have been subject to a violation, misinterpretation or inappropriate application of district personnel policies and/or administrative regulations. The complaint procedure will provide an orderly process for the consideration and resolution of problems in the application or interpretation of district personnel policies.

"The complaint procedure will not be used to resolve disputes and disagreements related to the provisions of any collective bargaining agreement, nor will it be used in any instance where a collective bargaining agreement provides a dispute resolution procedure. Disputes concerning an employee's dismissal, contract non-renewal or contract non-extension will not be processed under this procedure.

"Reasonable efforts will be made to resolve complaints informally.

"Regulations will be developed to outline procedural timelines and steps under this policy."

Finally, the district had another six-page policy entitled "STAFF COMPLAINTS" and referred to as the "GBM-AR" policy. That policy provided that a "grievance" is a complaint by an employee or group of employees asserting that there has been "a violation or inequitable application of any provisions of the contract" or that the employee or employees "has

(have) been treated inequitably by reason of any act or condition which is contrary to established Board policy or practice governing or affecting employees." The staff complaint procedure—which includes a number of references to an "association"—ends in binding arbitration.[4]

To determine whether the district was required to arbitrate the Cox grievance, ERB began by examining the CBA. It noted that, in the grievance, Cox asserted that the district had violated the provisions of Article X of the CBA relating to just cause and to application of the complaint procedure. ERB noted that, although Article X.F provides, in part, that any action taken against an employee may be appealed "through the grievance procedure," the CBA contains no grievance procedure within its four corners.

Examining Article III of the CBA ("Status of the Agreement"), set out above, ERB concluded that the missing words and "fragmentary sentences" created an ambiguity regarding the parties' intent. Given that ambiguity, ERB reasoned, it was appropriate to look to extrinsic evidence to discern the parties' intent. ERB began by looking at the parties' 1996-97 CBA, which immediately preceded the CBA at issue here. Article III of that agreement provided that the parties' contract would be incorporated into and become part of the district's policies. And the bargaining history for the CBA at issue here, according to ERB, "establishes that the parties proposed no changes to this section of Article III."

Based on the language of Article III of the predecessor agreement, the bargaining history of the CBA at issue here, and the parties' practices, ERB concluded that "the parties intended their contract to be incorporated into District policies." Because the CBA refers to "the" grievance procedure, while the CBA itself contains no grievance procedure, ERB next examined the district's policies. As noted above, the district has two policies that might be the referent of the phrase "the grievance procedure" found in the CBA—the GBM policy and the GBM-AR policy.

---

[4] The procedure defines "association" as "[a]ny organization representing either the licensed or the classified personnel which has been elected by a majority vote of the respective employees."

After considering the two policies and their relationship to one another, ERB explained its conclusion that the parties intended the GBM-AR policy—with its arbitration provision—to apply:

"In sum, we are presented with contract language that specifically allows employees to appeal certain disputes to a grievance procedure and incorporates the contract into District policy. We have a specific District policy that addresses contract grievances and establishes a grievance procedure. We also have a general District policy that prohibits the use of the grievance procedure for contract grievances. Finally, we have evidence that the Association has used the grievance procedure previously for contract grievances, without objection from the District. To give meaning to the contractual references to a grievance procedure, we conclude that the parties, by incorporating the contract into District policy, intended that District policy would be the source of the grievance procedure, and that the GBM-AR policy was intended to be the procedure used for contract grievances."

ERB noted that Cox had claimed in the grievance that the district had violated Article X.F, that nothing in the CBA excludes such a grievance from arbitration, and that Article X.F expressly allows for appeal to the grievance procedure. "The District," ERB concluded, "had an obligation to proceed to arbitration once the internal steps of the process were complete." As noted above, having concluded that the CBA required the district to proceed to arbitration on the Cox grievance and that the district had not done so, ERB ordered the district to "arbitrate the Cox athletic director dismissal grievance."

On appeal, the district argues that ERB erred in concluding that the CBA required it to arbitrate the Cox grievance. The district points out that the CBA itself "provides no procedure ending in arbitration." It asserts that the CBA "in no way suggests * * * that the parties intended for District policy to be incorporated into the collective bargaining agreement." The district claims that, if its policies were incorporated into the CBA, it could "unilaterally create many provisions in the" CBA. Moreover, the district argues, even if the parties intended to incorporate some grievance procedure into the CBA, the relevant policy is the GBM policy (which

does not include arbitration), rather than the GBM-AR policy (which does). For the reasons set forth below, we reject the district's arguments.

■■ We begin with the law applicable to the interpretation of collective bargaining agreements. A collective bargaining agreement is a type of contract. As with other contracts, the general rule applicable to the construction of an unambiguous collective bargaining agreement is that it must be enforced according to its terms. *Bruner v. Oregon Baptist Home*, 208 Or 502, 506, 302 P2d 558 (1956). A contract is ambiguous if it can reasonably be given more than one plausible interpretation. *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 25, 22 P3d 739 (2001); *Portland Fire Fighters' Assn. v. City of Portland*, 181 Or App 85, 91, 45 P3d 162, *rev den*, 334 Or 491 (2002). "If a contract is ambiguous, the trier of fact will ascertain the intent of the parties and construe the contract consistent with" that intent. *OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991) (citing *Investment Service Co. v. Smither*, 276 Or 837, 843, 556 P2d 955 (1976)). Specifically, if a term of the contract is ambiguous, the court will "examine extrinsic evidence of the contracting parties' intent," if such evidence is available. *Yogman v. Parrott*, 325 Or 358, 363, 937 P2d 1019 (1997). "If the ambiguity persists, we resolve it by resorting to appropriate maxims of contractual construction." *Portland Fire Fighters Assn.*, 181 Or App at 91. In the context of a collective bargaining agreement that arguably requires arbitration, "one such maxim of construction is that any doubts about arbitrability are resolved in favor of arbitration." *Joseph Education Assn. v. Joseph Sch. Dist. No. 6*, 180 Or App 461, 467, 43 P3d 1187 (2002).

■ Whether the terms of a contract are ambiguous in the first instance is a question of law. *Evenson Masonry, Inc. v. Eldred*, 273 Or 770, 772, 543 P2d 663 (1975). If the contract is ambiguous, the intent of the parties is a factual question that, in the context of this judicial review of an ERB order, we review for substantial evidence. *See OSEA*, 311 Or at 199 (applying that standard). Ultimately, "[w]hether ERB correctly interpreted the CBA presents us with a legal question for which our review is plenary." *Harrisburg Ed. Assn. v. Harrisburg Sch. Dist. #7*, 186 Or App 335, 342, 63 P3d 1176,

*rev withdrawn*, 336 Or 15 (2003). We apply the interpretive rules set out above, keeping in mind the relevant standards of review.

■■    We have little trouble agreeing with ERB that the provision in the CBA regarding complaints—"[a]ny action taken against the employee * * * may be appealed through the grievance procedure"—is ambiguous. To be sure, the parties intended to allow association members to appeal adverse actions under some procedure; the question is, what procedure? The CBA's reference to "the grievance procedure" with no other mention of the particular procedure to be used creates an ambiguity when considered in the context of the document as a whole. It follows that ERB correctly considered extrinsic evidence in ascertaining which grievance procedure the parties were referring to in the CBA. And consideration of that extrinsic evidence confirms that the parties intended for the grievance procedure in the GBM-AR policy to apply to complaints under Article X.F of the CBA.

We begin with the parties' course of dealing, as the CBA at issue here did not arise in a bargaining vacuum. The record includes an agreement entered into by the association and the district in 1979. That agreement, which is structured like the 1997 CBA at issue here, includes many of the same provisions and much of the same language. And it includes a grievance procedure that provides for arbitration; that procedure is very close to the district's GBM-AR policy. The record also includes evidence regarding the parties' negotiations in 1991 for a collective bargaining agreement. At that time, as ERB found, the parties negotiated over certain "due process" and "just cause" provisions. Ultimately, those provisions—by agreement of the parties—were incorporated into a district policy. In 1996, the parties entered into a 1996-97 collective bargaining agreement. Article III of that agreement— unlike the fragmentary sentences in Article III of the CBA at issue here—stated, in part:

> "The provisions of this agreement shall be incorporated into and become part of the District existing policies, rules, regulations, practices and procedures of the District. Existing policies, rules, regulations, practices and procedures which are consistent with this agreement are not modified."

Several points emerge from the foregoing description of the past dealings between the parties. First, the parties have for many years had a grievance procedure that includes arbitration. Second, the agreements that the parties have reached sometimes have ended up in a collective bargaining agreement and sometimes have been reflected in district policies.[5] Third, in the agreement that directly preceded the CBA at issue here, the parties made it clear that the agreement would be incorporated into the district's policies and that the agreement would not affect the district's policies that were consistent with the agreement. And, as discussed below, the history of bargaining this particular CBA shows that the parties did not intend to change their prior arrangement.

ERB found that, with regard to the CBA at issue here, neither party proposed changes to Article III of the 1996-97 agreement, the "just cause" provision, or the complaint procedure in Article X.F. That finding, which is supported by the record, suggests that the missing words and fragmentary sentences in the CBA were inadvertent and that the parties intended the CBA to include the same provisions as its predecessor—at least regarding the status of the agreement, the just cause provision, and the complaint procedure.[6] We next consider the language of the CBA at issue in this case.

As noted, the CBA states that "[a]ny action taken against the employee * * * may be appealed through the grievance procedure." The parties agree that the CBA contains no explicit grievance procedure, yet the language shows that the parties intended an employee to be able to use *some* grievance procedure. The district's assertion that the absence of a grievance procedure in the CBA itself means that an employee simply has no recourse to any grievance procedure is too facile. According to the district, the analysis is simple: "The arbitration clause is not ambiguous;" the district

---

[5] Indeed, ERB found that the district "maintains a policy book which included District policies and the collective bargaining agreement between the Association and the District."

[6] As ERB found, however, the "District proposed, and the Association agreed, to omit the provision regarding the text of the just cause section in District policy from Appendix B" of the CBA.

argues, "it does not exist at all." But we agree with ERB: The reference to "the" grievance procedure demonstrates the parties' intent to provide a procedure by which an employee may challenge a district action. *See State v. Hutchison*, 176 Or App 363, 368, 31 P3d 1123 (2001) ("the definite article 'the' functions as an adjective to denote a particular, specified thing, not a general, unspecified class of things").[7]

All the considerations discussed above—the parties' prior dealings in previous contracts, the negotiations regarding the CBA at issue here, and the language of the CBA itself—convince us that ERB's finding that the parties intended the CBA to include a grievance procedure is supported by substantial evidence. As ERB explained, the language of Article III in the 1996-97 agreement (which, pursuant to the parties' agreement, is included in the district's policy book), the parties' past bargaining history, and the bargaining history of the CBA at issue here demonstrate that the parties intended the grievance procedure embodied in the district's policy to be the applicable procedure.

As noted, however, the district has two policies regarding staff complaints; one (GBM-AR) specifically covers alleged violations of the CBA, while the other (GBM) does not.[8] The GBM policy includes the following statement regarding its application:

> "The complaint procedure will not be used to resolve disputes and disagreements related to the provisions of any collective bargaining agreement, nor will it be used in any instance where a collective bargaining agreement provides a dispute resolution procedure. Disputes concerning an employee's dismissal, contract non-renewal or contract non-extension will not be processed under this procedure."

---

[7] *Hutchison* cited *Anderson v. Jensen Racing, Inc.*, 324 Or 570, 578-79, 931 P2d 763 (1997), for that proposition.

[8] The district asserts that GBM is a "policy," while GBM-AR is an administrative rule adopted pursuant to GBM. It follows, the district argues, that, if the two conflict, GBM governs. But nothing in the record suggests that the parties ever made that distinction in the past and nothing on the face of the two policies—both of which are in the record—suggests such a distinction.

In contrast, the GBM-AR policy refers explicitly to "a violation or inequitable application of any provisions of the contract[.]" In addition, as ERB found, the GBM-AR policy defines the term "Association," recognizes the association grievance committee, recognizes the association's right to represent employees, mandates district cooperation in drafting grievance forms, and bans members of the association's grievance committee from acting as grievance representatives in cases where that individual is the grievant. Moreover, as ERB also found, the association "previously used the GBM-AR policy to process contract grievances[.]"

Taking all of the above into consideration, ERB explained its conclusion that the parties intended the GBM-AR policy to apply:

"The GBM policy, in addition to being contrary to the GBM-AR policy, is internally contradictory, as demonstrated by the statement: '[t]he complaint procedure will not be used to resolve disputes and disagreements related to the provisions of any collective bargaining agreement, nor will it be used in any instance where a collective bargaining agreement provides a dispute resolution procedure.' That sentence says that the process cannot be used for a contract grievance, but it then goes on to imply that it could be used if the contract does not provide a procedure.
* * *

"In sum, we are presented with contract language that specifically allows employees to appeal certain disputes to a grievance procedure and incorporates the contract into District policy. We have a specific District policy that addresses contract grievances and establishes a grievance procedure. We also have a general District policy that prohibits the use of the grievance procedure for contract grievances. Finally, we have evidence that the Association has used the grievance procedure previously for contract grievances, without objection from the District. To give meaning to the contractual references to a grievance procedure, we conclude that the parties, by incorporating the contract into District policy, intended that District policy would be the source of the grievance procedure, and that the GBM-AR policy was intended to be the procedure used for contract grievances."

Substantial evidence supports ERB's finding regarding the parties' intent.[9]

In sum, taking into account the wording of the CBA, we conclude that the reference to "the" grievance procedure creates an ambiguity. In resolving that ambiguity, ERB correctly considered extrinsic evidence. Substantial evidence supports ERB's finding—based on careful consideration of the parties' past course of dealing and the bargaining history of this CBA—that the parties intended the district's GBM-AR policy to apply to grievances brought under Article X.F of the CBA. It follows that the CBA obligated the district to process the Cox grievance to arbitration.[10]

Affirmed.

---

[9] As noted above, the district claims that ERB should not have looked at district policy, as the district "can unilaterally create its policies." "If those policies became incorporated in the collective bargaining agreement," the district argues, it "could unilaterally create many provisions in the" CBA. But ERB never found that the parties intended to incorporate district policies in whatever form the district might amend them. Rather, ERB looked at current, existing district policy to ascertain what grievance procedure the parties intended to apply to disputes under the CBA.

[10] We understand that the parties have at times litigated this case under both Article X.A ("Just Cause") and X.F ("Complaint Procedure") of the CBA. We need not, and do not, decide whether an allegation that the district violated only the "just cause" provision of the CBA (Article X.A) would entitle the grievant to arbitration under the district's policies.