**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1467**

---

GENERAL ELECTRIC CAPITAL CORPORATION,

Plaintiff - Appellee,

versus

UNION CORP FINANCIAL GROUP INCORPORATED, a/k/a
Lion Financial, a/k/a S and S Financial, a/k/a
Chase Banking and Trust, formerly known as
BancUnion Trust; HECTOR ESTRADA; MARTHA
ESTRADA, a/k/a Martica Estrada, a/k/a Marta
Estrada; MICHAEL SAGARO,

Defendants - Appellants,

and

ATHENA BEAUTY INCORPORATION, and its
Directors-Trustees; BEAUTICIAN DESIGN CENTER
INCORPORATED; BEAUTICIAN SUPPLY AND EQUIPMENT
COMPANY, and its Directors-Trustees; INDOFF
INCORPORATED, t/a Salon Depot; DONALD E.
GERTLER; DOE INCORPORATED, 1 through 10; JOHN
AND JANE DOES, 1 through 10,

Defendants.

---

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Peter J. Messitte, District Judge. (CA-
03-3285-PJM)

---

Argued: May 25, 2005                      Decided: July 21, 2005

Before LUTTIG and SHEDD, Circuit Judges, and Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

---

Reversed and remanded by unpublished opinion. Senior Judge Siler wrote the opinion, in which Judge Luttig and Judge Shedd joined.

---

**ARGUED:** Joseph Peter Drennan, Alexandria, Virginia; Ronald I. Strauss, Miami, Florida, for Appellants. Steven Neal Leitess, LEITESS, LEITESS, FRIEDBERG & FEDDER, P.C., Owings Mill, Maryland, for Appellee. **ON BRIEF:** Patrick M. Donahue, Annapolis, Maryland, for Appellants. Gordon S. Young, Andrew L. Cole, LEITESS, LEITESS, FRIEDBERG & FEDDER, P.C., Owings Mill, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

SILER, Senior Circuit Judge:

Plaintiff General Electric Capital Corporation ("GE") sued Florida defendants Union Corp Financial Group Incorporated, Hector Estrada, Martha Estrada, and Michael Sagaro (collectively "BancUnion") in the United States Court for the District of Maryland alleging, <u>inter</u> <u>alia</u>, fraud, breach of contract, and violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The district court denied BancUnion's motion to compel arbitration, holding that the agreement did not apply to the current dispute. We reverse and remand.

I.

In May 2000, GE and BancUnion executed a Broker Agreement, under which BancUnion would solicit customers who needed to obtain lease financing and then assign the leases to GE. The Broker Agreement states, "In return for [BancUnion's] efforts in connection with any transaction submitted by [it] and accepted by [GE, GE] shall, if the transaction is [accepted], pay [to BancUnion GE's] standard brokerage fee thereon in accordance with [GE's] then current brokerage fee schedule."

The Broker Agreement purported to apply to "all transactions submitted by [BancUnion] to [GE] after the execution hereof. However, in the event that separate assignment agreements are entered into with respect to specific transactions, the terms of

3

the separate assignment agreements shall prevail." Furthermore, the Broker Agreement contained an Oregon choice of law clause and stated that any "controversy or claim arising out of or related to this Agreement or the breach hereof shall be settled by arbitration." Furthermore, a party seeking to enforce any portion of the Broker Agreement in litigation "shall be entitled to a reasonable attorney fee . . . with all costs and expenses incurred in pursuit hereof." After the agreement was executed, GE allowed BankUnion to access standard forms, including the assignment form.

The assignment form designated that BancUnion would give GE the right to receive "all rental payments, renewal rental payments, claims and rights to monies due and to become due under the Lease," and BancUnion warranted that the leases assigned would be "genuine and enforceable." Unlike the Broker Agreement, the assignments do not contain an arbitration clause. Instead, the assignment states that in "the event of legal action with regard to the terms of this Assignment, the parties hereto agree that any court of general jurisdiction in the State of Oregon shall have jurisdiction over such controversy."

In November 2003, GE filed a complaint against BancUnion alleging, inter alia, RICO violations and fraud with respect to several assignments. BancUnion filed a motion to stay the proceeding and compel arbitration, which the district court denied because the assignments do not mandate arbitration.

II.

We review de novo the district court's conclusions regarding arbitrability. Long v. Silver, 248 F.3d 309, 315 (4th Cir. 2001).

To determine if a dispute should be arbitrated, we must affirmatively answer two questions: 1) did the parties have a valid agreement to arbitrate? if so, 2) does the arbitration agreement apply to the dispute at hand? See, e.g., Alamria v. Telcor Int'l, Inc., 920 F. Supp. 658, 663 (D. Md. 1996). Because "arbitration is a matter of contract," parties cannot "be required to submit to arbitration any dispute which [they have] not agreed so to submit." AT&T Tech., Inc. v. Comm. Workers of Am., 475 U.S. 643, 648 (1986). When making this determination, we should apply "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Because the contract so specifies, Oregon law applies to this dispute.

An agreement to arbitrate clearly exists between GE and BancUnion in the Broker Agreement, so we must next determine its scope, keeping in mind the presumption favoring arbitration, see Alamria, 920 F. Supp. at 663 ("However, if an agreement is silent or ambiguous regarding whether a particular dispute is arbitrable, . . . it is assumed that the dispute is subject to arbitration.") (citing First Options, 514 U.S. at 945) (emphasis in original), which flows from the "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,

5

460 U.S. 1, 24-25 (1983) (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Additionally, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted) (noting that this presumption is a matter of federal law). Indeed, we will not deny a request to arbitrate unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. (citation omitted).

The scope of an arbitration clause in one contract can extend to a dispute arising under a second contract, provided that the dispute "significantly relates" to the first agreement. 96 F.3d at 93; see also Long, 248 F.3d at 316. In American Recovery, the parties entered into an overarching contract which contained an arbitration clause, 96 F.3d at 90, and a separate, non-compete agreement which did not. Id. When a dispute arose under the non-compete agreement, we held that the dispute should be arbitrated because "the test for an arbitration clause of this breadth is not whether a claim arose under one agreement or another, but whether a significant relationship exists between the claim and the agreement containing the arbitration clause." Id. at 94; see also

6

<u>Cara's Notions, Inc. v. Hallmark Cards, Inc.</u>, 140 F.3d 566, 571 (4th Cir. 1998) (applying an arbitration clause in one contract to a dispute originating from another contract because the arbitration clause purported to apply to all disputes between the parties). As in <u>American Recovery</u>, GE and BancUnion have an overarching Broker Agreement which contains an arbitration clause. Even though GE sued BancUnion under the assignments, the arbitration agreement extends to such disputes arising under the assignments because they "significantly relate" to the Broker Agreement.

Oregon contract law also mandates reversal because the terms of an unambiguous contract should be enforced. <u>See</u> <u>Joseph Educ. Ass'n v. Joseph Sch. Dist. No. 6</u>, 43 P.3d 1187, 1190 (Or. App. 2002); <u>see</u> <u>also</u> <u>Yogman v. Parrott</u>, 937 P.2d 1019, 1021 (Or. 1997) (en banc). A contractual provision is ambiguous if it is "reasonably capable of more than one construction." <u>Joseph Educ. Ass'n</u>, 43 P.3d at 1190 (citation omitted). If there is an ambiguity, then we should interpret the contract by looking to extrinsic evidence and "maxims of construction," with "any doubts about arbitrability . . . resolved in favor of arbitration." <u>Id</u>.

The assignments are silent on the issue of arbitration, despite the presence of a clause in each referencing litigation as a potential dispute-resolution forum. However, nothing in the assignments prevents the arbitration clause from being read into the assignments, and the Broker Agreement contemplates that its terms

7

will supplement the assignments.  Additionally, the assignments state that in "the event of legal action," the parties agree to litigate the case in court in Oregon.  The arbitration clause in the Broker Agreement does not contradict the litigation clause because "the event of legal action" may still exist either to compel arbitration or to raise post-arbitration legal challenges.  At best, the assignments' silence on this issue is a latent ambiguity and must be resolved in favor of arbitration.  Cara's Notions, 140 F.3d. at 571 ("[I]f the arbitration clause [is] ambiguous as to its scope, our decision would be guided by the strong federal policy favoring arbitrability, based on the Arbitration Act and repeatedly recognized by the Supreme Court and this Circuit."); see also Portland Fire Fighters' Ass'n, Local 43 v. City of Portland, 45 P.3d 162, 168 (Or. App. 2002).  Accordingly, we reverse the decision of the district court.

The individual defendants, too, are afforded the protections of BancUnion's arbitration clause because they are BancUnion's officers, directors, or shareholders. See Long, 248 F.3d at 320 ("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract."); see also Int'l Paper Co. v. Schwabedissen Machinsen & Anlagen, 206 F.3d 411, 417 (4th Cir. 2002) (noting that an agency relationship would allow a non-signatory to enforce an arbitration agreement by the principal) (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).

8

Finally, BancUnion is entitled to attorney's fees for defending this action in litigation. The contract clearly states that if "action is taken to enforce any term of this Agreement, the prevailing party in such action shall be entitled to a reasonable attorney fee."

Reversed and remanded to the district court with instructions to compel arbitration and award attorney's fees consistent with this opinion.

REVERSED AND REMANDED